**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARTHA M. BOHNAK, DEBBIE JO TERZOLI, BELINDA LOOMIS, CYNTHIA BROWN, CONNIE JOHNSON, DONNA BROWN, KATHLEEN HELTON, LESLIE TRANTUM, TAMMY JOHNSON, SUE JONES, and JUAN SEPULVEDA, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>   v.<br><br>TRUSTED MEDIA BRANDS, INC.,<br><br>       Defendant. | Civil Action No.: 21-7476 (NSR) |

**DEFENDANT TRUSTED MEDIA BRANDS, INC.'S**
**<u>MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION AND PRELIMINARY STATEMENT.............................................................. 1

FACTUAL BACKGROUND & ALLEGATIONS ....................................................................... 3

STANDARD OF REVIEW .......................................................................................................... 5

ARGUMENT ............................................................................................................................... 6

I.      Plaintiffs' Claims Must Be Dismissed Because Their Names Were Not Used For a
        Prohibited Purpose. .......................................................................................................... 6

        A.      Right of Publicity Laws Protect Certain Commercial Uses of a Name, Not
                Any Use Of a Name. .............................................................................................. 6

        B.      List Rental Is Not an Infringing Commercial Use of a Person's Name.................. 8

                1.      Numerous Courts Have Rejected Plaintiffs' Theory……………...8

                2.      TMBI Did Not Use Any Plaintiff's Name
                        "On or In" a Separate or Distinct Product or Service……………11

                3.      List Rental Does Not Infringe on the Property Right Protected
                        By the Right of Publicity Laws…………………………………..14

                4.      Plaintiffs' Claims Fails for Another Fundamental Reason In That
                        Their Names Were Never Used Publicly………………………...18

II.     At Most, Plaintiffs Allege an Incidental Use of Their Identities That Does Not
        Infringe the Right of Publicity Laws. .............................................................................. 20

III.    Accepting Plaintiffs' Right of Publicity Theory Would Raise Significant Issues
        under the First Amendment and Equivalent State Protections. ........................................ 22

IV.     Dismissal With Prejudice Is Warranted. .......................................................................... 24

CONCLUSION........................................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*,
No. 08-7508, 2009 WL 3346674 (S.D.N.Y. Oct. 15, 2009)....................................................24

*Aligo v. Time-Life Books, Inc.*,
No. C 94-20707 JW, 1994 WL 715605 (N.D. Cal. Dec. 19, 1994)........................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................................5, 6

*Bergen v. Martindale-Hubbell, Inc.*,
285 S.E.2d 6 (Ga. 1981).............................................................................................................23

*Brooks v. Thomson Reuters Corporation*,
No. 21-CV-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ................................ *passim*

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011)....................................................................................................................24

*Clark v. Martinez*,
543 U.S. 371 (2005)....................................................................................................................23

*In re Clearview AI, Inc., Consumer Privacy Litig.*,
No. 21-cv-0135, 2022 WL 444135 (N.D. Ill. Feb. 14, 2022)....................................................12

*Cohen v. Facebook, Inc.*,
No. C 10-5282 RS, 2011 WL 5117164 (N.D. Cal. Oct. 27, 2011)........................................16

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
21 P.3d 797 (Cal. 2001) .......................................................................................................13, 15

*Davis v. Elec. Arts Inc.*,
775 F.3d 1172 (9th Cir. 2015) ...................................................................................................21

*Dex Media West, Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) .....................................................................................................23

*Dobrowolski v. Intelius, Inc.*,
No. 17-1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018)....................................................13

*Dwyer v. American Express Co.*,
652 N.E.2d 1351 (Ill. App. Ct. 1995) ..................................................................................10, 16

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................16, 20

*Ellington v. Gibson Piano Ventures, Inc.*,
No. 103CV0804, 2005 WL 1661729 (S.D. Ind. June 24, 2005) .............................................18

*ETW Corp. v. Jireh Pub., Inc.*,
332 F.3d 915 (6th Cir. 2003) ........................................................................10, 23

*Gallop v. Cheney*,
642 F.3d 364 (2d Cir. 2011).............................................................................24

*Harvey v. Sys. Effect, LLC*,
154 N.E.3d 293 (Ohio Ct. App. 2020)..............................................................16, 22

*Hilton v. Hallmark Cards*,
599 F.3d 894 (9th Cir. 2010) ...........................................................................23

*Huston v. Hearst Commc'ns, Inc.*,
No. 21-cv-1196, 2022 WL 385176 (C.D. Ill. Feb. 7, 2022) ........................................ *passim*

*J.R. v. Walgreens Boots Alliance, Inc.*,
470 F. Supp. 3d 534 (D.S.C. 2020)................................................................19, 20

*Joseph Burstyn, Inc. v. Wilson*,
343 U.S. 495 (1952)........................................................................................23

*Maremont v. Susan Fredman Design Grp., Ltd.*,
No. 10 C 7811, 2011 WL 6101949 (N.D. Ill. Dec. 7, 2011) ...........................................17

*MetLife Investors USA Insurance Co. v. Zeidman*,
734 F. Supp. 2d 304 (E.D.N.Y. 2010), *aff'd sub nom. MetLife Inv'rs USA Ins.*
*Co. v. Pratt*, 442 F. App'x 589 (2d Cir. 2011).......................................................20

*Nelson v. Harrah's Entm't Inc.*,
No. 07 C 7227, 2008 WL 2444675 (N.D. Ill. June 13, 2008) ................................................17

*Reed v. Town of Gilbert, Ariz.*,
576 U.S. 155 (2015)........................................................................................24

*Santana v. Mt. Vernon City Sch. Dist./Bd. of Educ.*,
No. 20-3212, 2021 WL 4523770 (S.D.N.Y. Sept. 30, 2021) ..................................................5

*Sarver v. Chartier*,
813 F.3d 891 (9th Cir. 2016) ...........................................................................24

*Schifano v. Greene Cnty. Greyhound Park, Inc.*,
624 So. 2d 178 (Ala. 1993)...............................................................................21

*Schroeder v. Volvo Grp. N. Am., LLC*,
  No. LACY 20-05127, 2020 WL 6562242 (C.D. Cal. Sept. 3, 2020) .....................................21

*Shibley v. Time, Inc.*,
  341 N.E.2d 337 (Ohio Ct. App. 1975) ...................................................................................10

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011)...............................................................................................................23

*In re Trans Union Corp. Privacy Litig.*,
  326 F. Supp. 2d 893 (N.D. Ill. 2004) .....................................................................................15

*U.S. News & World Report, Inc. v. Avrahami*,
  No. 95-1318, 1996 WL 1065557 (Va. Cir. Ct. June 13, 1996)................................9, 10, 16, 21

*Vrdolyak v. Avvo, Inc.*,
  206 F. Supp. 3d 1384 (N.D. Ill. 2016) ...................................................................................23

*Westminster Presbyterian Church of Muncie v. Yonghong Cheng*,
  992 N.E.2d 859 (Ind. Ct. App. 2013).....................................................................................22

*Zacchini v. Scripps-Howard Broadcasting Co.*,
  433 U.S. 562 (1977)...............................................................................................................15

**Statutes**

Alabama Code
  § 6-5-770, *et seq.* ................................................................................................... *passim*

California Civil Code
  § 3344, *et seq.* ....................................................................................................... *passim*

Indiana Code
  § 32-36-1-1, *et seq.* ............................................................................................... *passim*

Nevada Revised Statutes Annotated
  § 597.770, *et seq.* ................................................................................................. *passim*

Ohio Revised Code Annotated
  § 2741.01, *et seq.* ................................................................................................. *passim*

Puerto Rico Laws Annotated
  Tit. 32, § 3151, *et seq* ........................................................................................... *passim*

South Dakota Codified Laws
  § 21-64-1, *et seq.* .................................................................................................. *passim*

Washington Revised Code
§ 63.60.010, *et seq.* ................................................................................................ *passim*

**Rules and Regulations**

Federal Rule of Civil Procedure
Rule 12(b)(6)................................................................................................................1, 5

**Other Authorities**

McCarthy, 1 Rights of Publicity and Privacy,
§ 5:19 (2d ed.) ................................................................................................................14

Restatement (Second) of Torts
§ 652C cmt. d (1977) .......................................................................................................8, 18

Defendant Trusted Media Brands, Inc. ("TMBI") hereby moves to dismiss the Amended Complaint [ECF No. 17], with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION AND PRELIMINARY STATEMENT

This case has nothing to do with publicity.  Unsurprisingly, *no* state or federal court has ever sustained a right of publicity claim under analogous facts.

Plaintiffs Martha M. Bohnak, Debbie Jo Terzoli, Belinda Loomis, Cynthia Brown, Connie Johnson, Donna Brown, Kathleen Helton, Leslie Trantum, Tammy Johnson, Sue Jones, and Juan Sepulveda seek to hold TMBI liable for massive statutory damages under gross misreadings of the right of publicity statutes of seven states and Puerto Rico, despite the fact that Plaintiffs do not—and cannot—allege that their names or identities were used for a commercial purpose within the meaning of those right of publicity laws, such as advertising, marketing, promotion, or merchandising.  There is no allegation that, for example, TMBI advertised its mailing list ("Mailing List" or "List") as the "Martha Bohnak" list or used any Plaintiff's name in such a manner.  Nor is there any allegation that TMBI used any of Plaintiffs' names to promote a TMBI list, entice a sale of a list, spark interest in a list, or anything of the sort.

TMBI is not alleged to have promoted or advertised a list as containing any particular name.  In other words, no "publicity" at all—the *sine qua non* of any right of publicity claim— was given to Plaintiffs' names or any other names.  Rather, as admitted by Plaintiffs themselves, the only way the name of a TMBI subscriber is allegedly disclosed to a third party is privately— in a private transaction when a third party rents, exchanges, or purchases use of such name as part of a List of names to enable that third party to send direct mail advertisements for another product or service to those very subscribers.  *See* Am. Compl. ¶¶ 50-52.  Moreover, Plaintiffs do not even allege that their names were provided to a third party as part of such a List, much less

which third party allegedly received such List, or when—let alone any public holding out of their name.

At most, the Amended Complaint pleads a hypothetical transaction between TMBI and another entity, where the names and addresses that make up the List *are* the product being rented.  In other words, the TMBI Mailing List is not a promotion or advertisement for a product or a label on a product; the names, like the compilation of names as part of a phone book, *are* the "product."  This fact pattern does not violate any right of publicity laws, because, as discussed below, the alleged use is not prohibited under the plain language of any of the statutes at issue.

Every court to examine a claim like Plaintiffs' has rejected it.  Judge Mihm of the U.S. District Court for the Central District of Illinois summarily dismissed an Illinois right of publicity claim brought by Plaintiffs' counsel in this case on behalf of another purported magazine subscriber, making the same central allegations against Hearst regarding the communication of subscriber names as part of a mailing list.  *See Huston v. Hearst Commc'ns, Inc.*, No. 21-cv-1196, 2022 WL 385176, at *3 (C.D. Ill. Feb. 7, 2022).  Judge Mihm held the allegations failed to state a claim that the subscriber's identity was used for a "commercial purpose," namely advertising or promotion of another product.  *Id.*  Every right of publicity statute at issue here has an analogous requirement, requiring the same result.

Not only would Plaintiffs' claims necessitate rewriting these statutes, but doing so would also run afoul of the First Amendment.  By trying to conjure a requirement of the express consent of individuals whose names are part of a list, Plaintiffs are attempting to impose a sweeping constraint on speech through the right of publicity laws that would effectively ban the distribution of telephone directories, directories listing professionals, and other publications that have historically received robust Constitutional protection.

-2-

Plaintiffs' lawsuit seeks to twist and transform these right of publicity laws into something that they are not—data privacy statutes that are overwhelmingly more restrictive than the most restrictive data privacy statutes that have actually been enacted in the United States or that are even being considered by state legislatures—and thereby impose unintended and potentially crippling liability on TMBI in this purported class action, and by extension, on countless other companies as well.  There is no right of publicity violation here.  Plaintiffs' claims suffer from fundamental and irreparable legal defects, and the Amended Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND & ALLEGATIONS

TMBI publishes well-known magazines such as *Reader's Digest* and *Taste of Home.* Third parties who want to market to TMBI subscribers can purchase access to the Mailing List. Using the TMBI Mailing List, third party marketers then send direct mail advertising to the subscribers on the Mailing List—a practice commonly referred to as "list rental."  This is a well-known, common, decades-old practice throughout the magazine industry as well as for companies in a variety of industries.

Plaintiffs' allegations in this lawsuit are similar to those in dozens of other putative class action lawsuits filed by the same lawyers in the past few months seeking to impose crippling liability on publishing companies under the right of publicity laws of various states and Puerto Rico.[1]  Absent any supporting factual detail or exhibits, Plaintiffs make the sweeping allegation that, without the consent of its subscribers, TMBI "sells, licenses, rents, exchanges, and

---

[1] At least ten cases are pending in this District alone, with additional cases pending around the country.  *E.g.*, *In re Hearst Communications State Right of Publicity Statute Cases,* No. 21-cv-8895; *Dodd v. Advance Magazine Publishers Inc., d/b/a Condé Nast*, No. 21-cv-8899; *Wallen v. Consumer Reports, Inc.*, No. 21-cv-8624.

otherwise discloses. . . its customers' specific identities, including their full names [and] titles of magazine publications subscribed to" (Am. Compl. ¶ 3)—to "various third parties, including data miners, data aggregators, data appenders, data cooperatives, list rental recipients, list exchange recipients, and/or list brokers among others" (so-called "Data Brokerage Clients") (*id.* at ¶ 2). *See also id.* ¶¶ 50-52.  According to Plaintiffs, all of whom are alleged subscribers, TMBI's practices violate the right of publicity laws where they reside—Alabama, California, Indiana, Nevada, Ohio, Puerto Rico, South Dakota, and Washington.  *Id.* ¶¶ 75-167.

Plaintiffs allege that TMBI's Mailing List is "being rented and exchanged on the open market" (Am. Compl. ¶ 57).[2]  Plaintiffs do not allege that any name on the List is disclosed to a third party other than in a confidential, private transaction.  In fact, Plaintiffs fail to identify any specific instance of TMBI disclosing its Mailing List to any third party, much less that they were part of such a List.  According to Plaintiffs, TMBI's "customers remain unaware that their identities" are being disclosed.  *Id.*  Plaintiffs say they do not know how many subscribers are referenced in TMBI's Mailing List, but speculate there may be "hundreds of thousands" in each of the states represented.  *Id.* ¶ 69.  Plaintiffs (despite bringing right of publicity claims) do not even allege that any recipient of a Mailing List has ever known, at any time, what names the List contained.  Logically, Plaintiffs therefore do not allege that any recipient ascribed a unique value to any individual name they purportedly received based on the persona or identity associated

---

[2] Putting aside the falsity of that statement, it is important to recognize what is actually being alleged and not alleged here.  Making a name available for rental or exchange purportedly in the "open market" does not mean publicizing or disclosing the name itself in the open market. Plaintiffs do not and could not allege that TMBI has publicly disclosed any name, because no rational company would make its proprietary customer list publicly available.  Because the Court must accept Plaintiffs' allegations as true for purposes of this motion, TMBI sets forth the factual background as alleged in the Amended Complaint without prejudice to its right to dispute the factual allegations at the appropriate time.

with that name, including that of any Plaintiff—let alone that anyone was induced to purchase a "Data Brokerage Product" (as Plaintiffs label it) because of any Plaintiff's specific name.

But more fundamentally, the Amended Complaint is devoid of any allegations or supporting exhibits that show that any of Plaintiffs' names (or *any* identifying information, for that matter) were ever used by TMBI to promote its Mailing List—or another separate product. Rather, based on Plaintiffs' own allegations, TMBI's Mailing List *is* the "product" at issue in this case. *See, e.g.*, Am. Compl. ¶ 6 (alleging that by selling "products to its Data Brokerage Clients comprised entirely of its magazine subscribers' identities"—i.e., its Mailing List—TMBI "has violated, and continues to violate" right of publicity laws).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is 'not bound to accept as true a legal conclusion couched as a factual allegation,' or to credit 'mere conclusory statements' or '[t]hreadbare recitals of the elements of a cause of action.'" *Santana v. Mt. Vernon City Sch. Dist./Bd. of Educ.*, No. 20-3212, 2021 WL 4523770, at *7 (S.D.N.Y. Sept. 30, 2021) (citing *Iqbal*, 556 U.S. at 662, 678).

As noted above, this case is one of the dozens that Plaintiffs' counsel has filed against magazine publishers and other businesses over the past few months in this District (and others), with nearly identical, cookie-cutter allegations, under various states' laws, lured by the potential

for astronomical statutory damages.[3]  It is imperative to scrutinize the Amended Complaint's allegations to assess whether "plaintiff has pled sufficient facts to nudge the claims across the line from conceivable to plausible."  *Id.*  (quoting *Twombly*, 550 U.S. at 570).  Under these well-established standards, Plaintiffs' claims fail as a matter of law.

<u>**ARGUMENT**</u>

**I.    Plaintiffs' Claims Must Be Dismissed Because Their Names Were Not Used For a Prohibited Purpose.**

**A.    Right of Publicity Laws Protect Certain Commercial Uses of a Name, Not Any Use Of a Name.**

The Amended Complaint is devoid of any factual allegations that would bring it within the right of publicity.  Those courts that have examined claims similar to Plaintiffs' have consistently rejected them because the (possible) communication of people's names as part of a data set or mailing list, in and of itself, makes no "use" of the commercial value of an individual's identity within the meaning of right of publicity laws.

The eight statutes here all define the right of publicity as a right to protect *commercial* uses of one's *unique* identity, through advertising, marketing, promotion, endorsement, or equivalent commercial activity.  In relevant part, the statutes provide:

- **Alabama Code § 6-5-772**: "any person . . . who *uses or causes the use* of the indicia of identity of a person, *on or in products, goods, merchandise, or services entered into commerce in this state*, or for purposes of *advertising or selling*, or *soliciting purchases* of, products, goods, merchandise, or services . . . without consent shall be liable . . . ."

- **California Civ. Code § 3344**: "Any person who knowingly *uses*" indicia of identity "*on or in products, merchandise, or goods*, or for purposes of *advertising or selling*, or *soliciting purchases of*, products, merchandise, goods or services" without consent "shall be liable . . . ."

---

[3] Notably, Plaintiffs are only bringing right of publicity claims under statutes that provide for significant statutory damages under certain conditions, which they seek to multiply through "in-terrorem" class actions.  Ala. Code § 6-5-774(1); Cal. Civ. Code § 3344(a); Ind. Code § 32-36-1-10; Nev. Rev. Stat. § 597.810; Ohio Rev. Code Ann. § 2741.07; P.R. Laws Ann. tit. 32, § 3156; S.D. Codified Laws § 21-64¬5; Wash. Rev. Code § 63.60.060(2).

- **Indiana Code §§ 32-36-1-2 & 32-36-1-8**: "A person may not *use* an aspect of a personality's right of publicity *for a commercial purpose* . . . without having obtained previous written consent"; "'*[C]ommercial purpose*' means the *use* of an aspect of a personality's right of publicity as follows: (1) *On or in connection with a product, merchandise, goods, services, or commercial activities*. (2) For *advertising or soliciting purchases* of products, merchandise, goods, services, or for *promoting commercial activities*. (3) For the purpose of fundraising."

- **Nevada Rev. Stat. §§ 597.780 & 597.810**: "Any *commercial use* of" identity without consent is subject to liability; the law "appl[ies] to *any commercial use within this state* of a living or deceased person's name, voice, signature, photograph or likeness . . . ."

- **Ohio Rev. Code Ann. §§ 2741.01 & 2741.02**: "a person shall not *use* any aspect of an individual's persona *for a commercial purpose*"; "'*Commercial purpose*' means the *use of or reference to*" identity "(1) *On or in connection with a place, product, merchandise, goods, services, or other commercial activities* . . . ; (2) For *advertising or soliciting [a] purchase* . . . ; (3) For the purpose of *promoting* travel to a place; (4) For the purpose of fundraising."

- **Puerto Rico St., P.R. Laws Ann. tit. 32, §§ 3151 & 3152**: "Any . . . person who *uses* another's likeness *for commercial, trade, or advertising purposes* without [] previous consent . . . shall be liable"; "*Commercial purpose*. - The *use* of a person's likeness in connection with an *advertisement, offer, or sale of a product, merchandise, good or service in the market*."

- **South Dakota Codified Laws §§ 21-64-1 & 21-64-2**: "No person may *use* any aspect of a personality's right of publicity for a *commercial purpose* . . . without [] express written consent"; "'*Commercial purpose*,' the *use* of an aspect of a personality's right of publicity *in connection with a product, merchandise, goods, service, or commercial activity*; for *advertising or soliciting purchases* of a product, merchandise, goods, service, or for promoting a commercial activity; or for the purpose of fund-raising."

- **Washington Rev. Code §§ 63.60.010 & 63.60.050**: "Any *person* who *uses or authorizes the use* of" indicia of identity "*on or in goods, merchandise, or products entered into commerce in this state*, or for purposes of *advertising* products, merchandise, goods, or services" without consent "has infringed such right"; "The right exists whether or not it was *commercially exploited* by the individual or the personality" during their lifetime.

None of these right of publicity laws purports to grant an all-purpose right to prohibit any use of a name in all, or even most, circumstances; they prohibit only infringing commercial uses. The Restatement underscores this limitation:  right of publicity and appropriation for commercial

purpose rights are invaded only "when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness." Restatement (Second) of Torts § 652C cmt. d (1977).  Not surprisingly then, as we detail next, every court to consider whether a mailing list rental violates the right of publicity has held it does not.

### B.   List Rental Is Not an Infringing Commercial Use of a Person's Name.

#### 1.   <u>Numerous Courts Have Rejected Plaintiffs' Theory.</u>

Although shrouded in opaque labels like "Data Brokerage Products" and "Data Brokerage Clients," the Amended Complaint merely alleges the private sale or rental of subscriber mailing lists to direct mail marketers through the list rental process.  This long-standing practice does not violate the right of publicity laws, as numerous courts have held.

The Central District of Illinois recently dismissed a virtually identical claim by another alleged magazine subscriber (brought by counsel who also represent Plaintiffs).  *Huston*, 2022 WL 385176, at *3.  In *Huston*, the plaintiff alleged Hearst used plaintiff's identity for a "commercial purpose" (defined in the Illinois Right of Publicity Act ("IRPA") as, *inter alia*, "on or in connection with the offering for sale or sale of a product, merchandise, [or] goods") when Hearst "sold" "Mailing List[s]" of magazine subscribers, thereby violating the law to the tune of $1,000 per class member.  *Id.* at *1–2.  The court held the plaintiff failed to state a claim that her identity was used for a "commercial purpose" under the IRPA, which governs "the use of an individual's identity to promote or entice the purchase of some other product."  *Id.* at *2 (citing *Nieman v. Versuslaw, Inc.*, 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012)).  The court found the plaintiff failed to identify "any case law to support [her] interpretation of the IRPA," that Hearst's alleged subscriber data could be an infringing "product," "merchandise," or "good."  *Id.* at *3.  The reasoning of *Huston* applies to the eight statutes at issue here, which all employ

similar language to the same ends.  *Huston* is, moreover, in accord with other courts that have examined similar claims.

In another case addressing a purported right of publicity claim in the context of the longstanding and commonplace magazine industry "list rental" practice at issue here, the court easily rejected it.  The court in *U.S. News & World Report, Inc. v. Avrahami*, cited in the *Huston* decision, critically found the list owner "did not promote or advertise its list as containing any particular name" and the list renter did not know the specific names that were part of the list. No. 95-1318, 1996 WL 1065557, at *4 (Va. Cir. Ct. June 13, 1996).  Dismissing the subscriber's right of publicity claim, the court ruled that "[t]he inclusion of a name as part of a larger mailing list for purposes of a direct mail solicitation does not constitute *use of that name in the promotion of an actual product or service itself.*"  *Id.* at *7 (emphasis added).

In concluding the subscriber's name lacked "any commercial value" within the meaning of the right of publicity, *id.* at *6, the court observed that "[i]t is not possible to rent only one name on a mailing list. . . . Typically, the [U.S. News] lists contain at least 100,000 names and addresses.  *There is no value associated with or assigned to an individual name on a mailing list. The value of a list comes not from the individual names contained on the list, but entirely from the list's association with a particular organization or group.*"  *Id.* at *2 (emphasis added).

Plaintiffs' allegations parallel the defective allegations in *U.S. News*.  The "Data Brokerage Clients" allegedly seek data from TMBI because TMBI "maintains a vast digital database" of subscribers.  Am. Compl. ¶ 50.  There is no allegation that any recipient was ever aware of any one of the "hundreds of thousands" of names of subscribers in a given state, let alone that any recipient sought out data because it included any of the Plaintiffs.  *Id.* ¶ 69.  There is no allegation TMBI "promote[d] or advertise[d] its list as containing any particular name."

*U.S. News*, 1996 WL 1065557, at *4.  No Plaintiff's identity has been infringed, or used at all, in a manner contemplated by the right of publicity laws at issue.  And, just as in *U.S. News*, the value of the TMBI List is not the names, identities, or personas of the subscribers that make up the List, but rather their association with TMBI—i.e., the **factual information** that they subscribe to a TMBI magazine.

Similarly, in *Shibley v. Time, Inc.*, 341 N.E.2d 337 (Ohio Ct. App. 1975), the court affirmed dismissal of a claim under then Ohio common law for "appropriation . . . of [] personality" against a magazine publisher for "selling subscription lists to direct mail advertising businesses . . . ."  *Id.* at 338–39.  The court observed the appropriation tort "refers to those situations where the plaintiff's name or likeness is *displayed to the public* to indicate that the plaintiff *indorses* [sic] *the defendant's product or business*," and found this commercial purpose was not achieved through the sale of subscriber lists.  *Id.* at 339 (emphases added).[4]

Citing *Shibley*, the court in *Dwyer v. American Express Co.*, 652 N.E.2d 1351 (Ill. App. Ct. 1995), affirmed dismissal of an Illinois common law appropriation claim arising out of American Express's "practice of renting information" about cardholders.  *Id.* at 1352–53.  The court found no "appropriation . . . of one's name or likeness for another's use or benefit," reasoning:

> [A] single, random cardholder's name has little or no intrinsic value to defendants (or a merchant).  Rather, an individual name has value only when it is associated with one of defendants' lists. . . . [D]efendants' practices do not deprive any of the cardholders of any value their individual names may possess.

*Id.* at 1355–56.  The same holds true here.

---

[4] Ohio's common law appropriation tort is analogous to its right of publicity statute.  *See ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 930–31 (6th Cir. 2003) (Ohio common law largely followed the Restatement, as evolved from Prosser, and is consistent with Ohio's statute).

All of the above right-of-publicity mailing list cases share a common thread:  the

inclusion of a name in a mailing list does not use that name for  a "commercial purpose"

because the names are not used to sell or endorse or draw attention to anything.  As such,

*no court has recognized a right of publicity claim for conduct that makes absolutely no*

*commercial use of a person's name or likeness*, as Plaintiffs alleged here.  This Court

should not be the first.

## 2.   TMBI Did Not Use Any Plaintiff's Name "On or In" a Separate Product or Service.

Despite clear precedent holding that a "list rental" process does not implicate right of

publicity laws, Plaintiffs seek to rescue their claim based on the "on or in" language in each of

the right of publicity statutes at issue.[5]  Specifically, Plaintiffs allege that the product at issue

here is a TMBI Mailing List that purportedly contains Plaintiffs' names and addresses, among

others.  *See* Am. Compl. ¶ 3 (referring to the Mailing List as Defendant's "Data Brokerage

Products").  Plaintiffs claim that because their names are "on or in" such Mailing List, the

inclusion of their names constitutes an infringing commercial use in violation of each of the right

of publicity statutes.

Plaintiffs' attempt to cram the private rental of subscriber mailing lists into these right of

publicity statutes through the "on or in" language necessarily fails.  In fact, as discussed above,

---

[5] Each statute at issue contains a variation of the "on or in" language.  *See* Ala. Code § 6-5-772(a) ("on or in products, goods, merchandise, or services"); Cal. Civ. Code § 3344(a) ("on or in products, merchandise, or goods"); Ind. Code 32-36-1-2 ("[o]n or in connection with a product, merchandise, goods, services, or commercial activities"); Nev. Rev. Stat. Ann. § 597.770 ("on or in any product, merchandise or goods"); Ohio Rev. Code §2741.02(A) ("[o]n or in connection with a place, product, merchandise, goods, services, or other commercial activities"); S.D. Codified Laws § 21 -64-1(1) ("in connection with a product, merchandise, goods, service, or commercial activity"); Wash. Rev. Code 63.60.050 ("on or in goods, merchandise, or products"); P.R. Laws. Ann. tit. 32, §3152(h) ("in connection with an advertisement, offer, or sale of a product, merchandise, good or service").

one court has already rejected Plaintiffs' specific theory.  Relying on the "on or in" language in the Illinois right of publicity statute, which defined "commercial purpose" as including the use of a person's name "on or in" a product, the same Plaintiffs' counsel here made the same argument to the Central District of Illinois in *Huston v. Hearst*.  2022 WL 385176, at *1–3.  The court swiftly rejected that theory, holding that the plaintiff's identity was not used for a "commercial purpose" as contemplated by the statute.  *Id.* at *3.  The same result is required here.

The *Brooks v. Thomson Reuters* decision is also instructive on this point.  In that case, the court rejected a right of publicity claim under California law where the defendant sold public and non-public information about plaintiffs through an online platform called CLEAR.[6]  Similar to Plaintiffs' allegations here, the *Brooks* plaintiffs "allege[d] the product *is* their name, likeness, and personal information."  No. 21-CV-01418, 2021 WL 3621837, at *4 (N.D. Cal. Aug. 16, 2021) (emphasis in original).  The court dismissed plaintiffs' right of publicity cause of action, ruling that there is no right of publicity violation where the *identity is the product* and, explaining that "Plaintiffs' name or likeness is not being 'appropriated' and used to advertise a *separate* product or service."  *Id.* at *5 (emphasis added).  The same is true here.  The Amended Complaint makes clear that subscribers' names *are* the product itself; they are not "on or in" a separate product.

Similarly, in *Dobrowolski v. Intelius, Inc.*, the court held that there was no violation of the Illinois right of publicity statute when plaintiffs' identities were incorporated within free previews of background reports about the plaintiffs *themselves*.  No. 17-1406, 2018 WL

---

[6] *Cf. In re Clearview AI, Inc., Consumer Privacy Litig.*, in which the court held that using a *specific* individual's biometric identity to induce a commercial transaction violated the right of publicity.  No. 21-cv-0135, 2022 WL 444135 (N.D. Ill. Feb. 14, 2022).  *Clearview* is easily distinguishable from the facts alleged in this case in that no recipient of a Mailing List is alleged to have *ever* been aware of *any* specific individual's identity.

11185289, at *3 (N.D. Ill. May 21, 2018).  The court ruled that "plaintiffs' identities are not being used to promote a separate product—they are used because plaintiffs' identities *are part of the product offered for sale*.  And this is not a commercial purpose as defined by the statute."  *Id.* (emphasis added).  The same reasoning applies here.  As in *Huston*, *Brooks* and *Dobrowolski*, Plaintiffs allege that their identities *are* the "the product."  And where the identity is the product, there is no right of publicity claim.  Equally important, Plaintiffs do not allege, nor can they allege, that TMBI used their identities to promote either the List itself—or any *other* products.

The crammed interpretation of the "on or in" language proffered by Plaintiffs distorts its meaning.  The inclusion of that language reflects the common-sense point that a person's name or likeness can be used to market a product in different ways.  Certainly, there is a difference between displaying someone's name "*on or in*" a separate product—versus using that person's name in a television commercial advertising that same product.  *See Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 21 P.3d 797, 802 (Cal. 2001) (recognizing this distinction).  For example, a marketer could put George Foreman's name on a grill—calling it the "George Foreman Grill"— or it could hire George Foreman to appear in a commercial to tout a grill.  But in either scenario, the underlying marketing purpose is the same:  to use a person's name to drive attention to that grill and ultimately sell it, for the commercial advantage of the grill company.  Thus, regardless of where a name appears—whether it is in an advertisement for a product, or "on or in" the product itself—the purpose of the right of publicity claim is to prohibit the nonconsensual use of a person's name to drive attention to that product.  *See* McCarthy, 1 Rights of Publicity and Privacy § 5:19 (2d ed.) (explaining the fundamental premise of a right of publicity claim is that a person's identity must be used "to draw attention to a product or advertisement"); *Brooks*, 2021 WL 3621837, at *5 (finding that the "use of a person's name and likeness to promote a product

(*other* than that which pertains to the person themselves) is the essence of an 'appropriation' of one's name or likeness") (emphasis added).

Here, Plaintiffs do not (and cannot) allege that their names were used to draw attention to a product.  The Amended Complaint makes clear that TMBI did not use Plaintiffs' names to entice anyone to buy a product, or even to buy the TMBI Lists.  There was no "Martha Bohnak List," for example, nor did any "Data Brokerage Client" ever know that Martha Bohnak's name would be on a list it rented.  *No court—not one—has ever sustained a right of publicity action under analogous facts*—where there was no public use of or connection between a person's name and the promotion or sale of, or otherwise drawing attention to, some other product.  For this fundamental reason, Plaintiffs' allegations do not and cannot state a claim under any of the right of publicity laws.

### 3. <u>List Rental Does Not Infringe on the Property Right Protected By the Right of Publicity Laws.</u>

Yet another reason why there is no infringing commercial use of Plaintiffs' names in the context of the statutes at issue here is because TMBI has not misappropriated any value associated with Plaintiffs' names, given that Plaintiffs' names are not being used to sell, promote, or draw attention to anything.

As the text of each of the right of publicity laws makes clear, each statute protects a specific "property right" in one's unique identity.[7]  As a property right, the right of publicity "protect[s] the fruits" of the holder's labor to create value that can be derived from her name.

---

[7] Ala. Code § 6-5-771(3) (defining right of publicity as "property" right); Cal. Civ. Code § 3344.1(b) (same); Ind. Code § 32-36-1-16 (same); Ohio Rev. Code Ann. §§ 2741.01(D) & 2741.04 (same); P.R. Laws Ann. tit. 32, § 3154 (same); S.D. Codified Laws §§ 21-64-1 & 21-64-4 (same); Wash. Rev. Code § 63.60.010 (same). Nevada does not use the term "property" to define the right of publicity but, like the other eight states, describes it as "freely transferable," assignable and descendible just as property (including intellectual property) would be. Nev. Rev. Stat. § 597.800(1).

*Comedy III*, 21 P.3d at 808.  *See Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 576 (1977) (observing that the common-law right of publicity prevents "theft of good will") (citation omitted).  Consequently, "[w]hat the right of publicity holder possesses is not a right of censorship, but a right to prevent others from misappropriating *the economic value generated by the [holder]*."  *Comedy III*, 21 P.3d at 807 (emphasis added).  Thus, the purpose of each right of publicity law is to confer a limited property right protecting against misappropriation of the commercial value of the holder's identity to advertise, promote or influence the sale of some other product.

However, based on Plaintiffs' own allegations, it makes no difference to the commercial value of the Mailing List whether a given subscriber is the most famous celebrity in the world or a recluse whose name is recognized by no one.  The purported "Data Brokerage Client" that receives the Mailing List would not know or even care; it is allegedly receiving "hundreds of thousands" of names without being aware of *any* specific name.  Am. Compl. ¶ 69.  All the recipient cares about is the **factual information** that each person is a subscriber to a magazine. It would turn the right of  publicity on its head for a plaintiff to claim a right of publicity where her identity, or even her fame or celebrity, is entirely irrelevant.  *See, e.g.*, *In re Trans Union Corp. Privacy Litig.*, 326 F. Supp. 2d 893, 895–96, 902 (N.D. Ill. 2004) (rejecting plaintiffs' theory that placement of their names and addresses on a marketing list deprived them of the value of their identities under misappropriation of likeness torts); s*ee also Dwyer*, 652 N.E.2d at 1356 (dismissing Illinois common-law right-of-publicity claim predicated on mailing lists because "defendants' practices do not deprive any of the cardholders of any value their individual names may possess").

Where, as here, Plaintiffs do not allege that they were harmed by appropriation of the *property* right in their personas, depriving *them* of their identities' *economic value*, they do not and cannot state a claim under the statute. *See Cohen v. Facebook, Inc.*, No. C 10-5282 RS, 2011 WL 5117164, at *2–*3 (N.D. Cal. Oct. 27, 2011) (dismissing § 3344 claim where plaintiffs alleged their "names and likenesses had an economic value *to Facebook*" but failed to allege how *plaintiffs* were harmed by Facebook's use of their identities) (emphasis in original); *see also Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293, 308 (Ohio Ct. App. 2020) (observing "[Ohio St. § 2741's] primary focus is the value of a person's name, vis-à-vis [*plaintiff's*] ability to market it for commercial purposes"). *Cf. Brooks*, 2021 WL 3621837, at *5 (dismissing § 3344 claim where alleged violation was "categorically different" from a right-of-publicity injury) (citing *In re Facebook, Inc., Consumer Privacy User Profile Litigation (In re Facebook)*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (dismissing common law right of publicity claim for the same reason and discussing economic incentives underlying the tort)).

Here, Plaintiffs do not and cannot allege that the alleged inclusion of their names as part of a List somehow deprived *them* of commercial value. *See U.S. News*, 1996 WL 1065557, at *2, *6 (subscriber's name lacked "any commercial value," because "[i]t is not possible to rent only one name on a mailing list"). Similarly, Plaintiffs do not and cannot allege that TMBI interfered with their property right to profit from their identities (should they so choose).[8]

Relatedly, given the nature of the right of publicity as a *property* right that protects a person from the deprivation of the economic value associated with their specific name, Plaintiffs cannot rely on an assertion that their *privacy* has been invaded through the list rental process to

---

[8] By the same token, Plaintiff Sepulveda does not allege that TMBI interfered with his ability to determine "what [his] identity is," as required by P.R. Law No. 139-2011.

state a claim under right of publicity laws.  It is legally insufficient simply to assert a privacy injury to state a right of publicity claim, and other courts have rejected plaintiffs' attempt to equate the two.  *See Brooks*, 2021 WL 3621837, at *5 (dismissing plaintiff's § 3344 claim because "the injury Plaintiffs suffered here . . . is not a violation of their right of publicity because their name or likeness is not being 'appropriated' and used to advertise a separate product or service"—"the essence of an 'appropriation' of one's name or likeness"); *cf. Nelson v. Harrah's Entm't Inc.*, No. 07 C 7227, 2008 WL 2444675, at *1 (N.D. Ill. June 13, 2008) (holding that an IRPA claim "requires more than just bare invasion of the plaintiff's privacy interest in his or her name"); *Maremont v. Susan Fredman Design Grp., Ltd.*, No. 10 C 7811, 2011 WL 6101949, at *6 (N.D. Ill. Dec. 7, 2011) ("'[I]t is not the use of the plaintiff's name which constitutes a tort but rather the appropriation of the value of his name and reputation.'") (quoting *Hooker v. Columbia Pictures Indus., Inc.*, 551 F. Supp. 1060, 1062 (N.D. Ill. 1982)).

Indeed, to permit Plaintiffs' claims to proceed would be to transform these right of publicity laws into sweeping data privacy laws, essentially creating a blanket restriction on the use of customer names in private transactions in these jurisdictions—which is far from these statutes' legislative purpose.  If Plaintiffs believe the law should prohibit these types of transactions, they may lobby their respective legislatures to enact statutes accordingly—subject, of course, to the First Amendment.[9]  But they cannot ask this Court to rewrite the existing right of publicity statutes.

---

[9] Some states at issue here have or are considering separate legislation regarding data protection. For example, in addition to California's recently passed data protection laws, requiring businesses to provide transparency notices on data collection, and an opportunity for the customer to opt-out (California Consumer Privacy Act and Privacy Rights Act of 2020), similar data privacy legislation is pending in Ohio, Alabama, Indiana, and Washington. *See, e.g.*, Ohio House Bill 376; 2021 AL HB216; Indiana Senate Bill 358; Washington Senate Bill 5062.  Yet

**4.      Plaintiffs' Claims Fails for Another Fundamental Reason In That Their Names Were Never Used Publicly.**

In creating a statutory cause of action for the right of publicity, the legislatures expressly created a cause of action for the wrongful *public* commercial use of one's name or identity.  The requirement of public use is inherent in the plain meaning of "publicity":  "the quality or state of being public."[10]  And "public" means "exposed to general view."[11]  Consistent with the legislative intent and plain meaning of the text, right of publicity cases contemplate a *public* use of an individual's name or likeness, such as an endorsement or display on the marketed product.[12]  The Restatement underscores this necessity:  right of publicity and appropriation for commercial purpose rights are invaded only "*when the publicity is given* for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness."  Restatement (Second) of Torts § 652C cmt. d (1977) (emphasis added).

As one federal court recently put it, even when "publicity is not explicitly stated as an element per se, it is still a fundamental requirement of the cause of action of wrongful appropriation of personality. . . . [I]nfringement on the right of publicity and wrongful appropriation of personality are one in the same, meaning publicity is required in a wrongful appropriation of personality claim."  *J.R. v. Walgreens Boots Alliance, Inc*., 470 F. Supp. 3d 534,

---

under Plaintiffs' perverse theory, data sharing is already illegal under these states' laws ***regardless of whether the customer is provided with notice and the opportunity to opt out***.

[10] *Publicity*, *Merriam-Webster's Dictionary*, https://www.merriam-webster.com/dictionary/publicity (last visited May 23, 2022).

[11] *Public, Merriam-Webster's Dictionary*, https://www.merriam-webster.com/dictionary/public (last visited May 23, 2022).

[12] *See e.g.*, *Ellington v. Gibson Piano Ventures, Inc.*, No. 103CV0804, 2005 WL 1661729, at *1 (S.D. Ind. June 24, 2005) (involving public use of the name "Ellington" on pianos and advertisements for pianos).

551–52 (D.S.C. 2020) (dismissing a claim under South Carolina law when plaintiffs' names were not made public).

Despite the inherent requirement of *publicity* in each of the right of publicity laws invoked by Plaintiffs, Plaintiffs do not allege—and cannot allege—that their names have been made "public" or received "publicity" in any way due to actions by TMBI.  Rather, based on Plaintiffs' own allegations, a Plaintiff's name would only be privately provided to a third party *after* the third party rents, exchanges, or purchases a Mailing List (assuming her name was on such a List).  *See* Am. Compl. at ¶¶ 48-53.  That type of private, confidential, disclosure is hardly "public" or "publicity"; no Plaintiff's name is "exposed to the general view" or "accessible" by the general public.

Courts around the country have repeatedly rejected claims similar to Plaintiffs' when a plaintiff's name was not given publicity by the defendant.  For example, in *Brooks v. Thomson Reuters Corporation*, 2021 WL 3621837, at *3–5, discussed previously, the court found that "Plaintiffs' name or likeness in this case were not sent to unsuspecting CLEAR users to advertise or promote the CLEAR platform or some other third party's products or services; they were sent only to CLEAR subscribers who deliberately paid Thomson Reuters to receive information about them."  *Id.* at *5.  In other words, plaintiffs' information was not made available to the public (for any purpose), but rather only to those who paid for access to the information.  The alleged disclosure of Plaintiffs' names here—to the extent it even occurred—is "categorically different" from the nature of the rights that this statute was intended to protect.  *In re Facebook*, 402 F. Supp. 3d at 803 (dismissing California right of publicity claim based on plaintiffs' allegation that Facebook had disclosed their  information to third parties for profit, including Cambridge Analytica, because such allegations were so "categorically different" from the right protected

under that law that the court "[could not] conceive of a way that the plaintiffs could successfully allege this claim").

Similarly, in *J.R. v. Walgreens Boots Alliance, Inc*., the court rejected plaintiffs' right of publicity claim where plaintiffs' names were contained in a database that was disclosed to affiliated companies, but was not available or disclosed to the public at large.  470 F. Supp. 3d 534, 550–52 (D.S.C. 2020).  Likewise, in *MetLife Investors USA Insurance Co. v. Zeidman*, the court found that use of a plaintiff's identity in a private contract, while connected to the sale of a product, was not a "public" use and thus could not form the basis of a right of publicity claim under Illinois law.  734 F. Supp. 2d 304, 312 (E.D.N.Y. 2010), *aff'd sub nom. MetLife Inv'rs USA Ins. Co. v. Pratt*, 442 F. App'x 589 (2d Cir. 2011).

Plaintiffs' theory here—attempting to turn a non-public use of their names into a right of publicity claim—twists these right of publicity statutes beyond recognition, pressing them into a service that was never intended and that defies common sense.  This Court should reject Plaintiffs' claims in their entirety.

## II.  At Most, Plaintiffs Allege an Incidental Use of Their Identities That Does Not Infringe the Right of Publicity Laws.

Plaintiffs also fail to state claims for the right of publicity for the independent reason that they have not sufficiently alleged that their names hold any unique commercial value, meaning that any alleged use by TMBI of their identities would be deemed incidental at most and not the basis for a right of publicity claim.[13]

---

[13] "Incidental use is a defense for right of publicity and commercial misappropriation claims." *Schroeder v. Volvo Grp. N. Am., LLC*, No. LACY 20-05127, 2020 WL 6562242, at *12 (C.D. Cal. Sept. 3, 2020) (citing *Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1180 n.5 (9th Cir. 2015)).  Factors considered by courts include: "(1) whether the use has a unique quality or value that would result in commercial profit to the defendant, (2) whether the use contributes something of significance, (3) the relationship between the reference to the plaintiff and the purpose and subject of the work[,] and (4) the duration, prominence or repetition of the name or likeness relative to the rest of the

As *U.S. News* held, "[t]he inclusion of a name as part of a larger mailing list—where no relationship exists between the individual name and the exchange of the list—is 'too fleeting and incidental' to be actionable" under Virginia's right of publicity statute. 1996 WL 1065557, at *7 (citing *Stillman v. Paramount Pictures Corp.*, 147 N.Y.S.2d 504 (Sup. Ct. N.Y. Cnty. 1956), *aff'd and modified on other grounds*, 2 A.D.2d 18 (1956), *aff'd*, 5 N.Y.2d 994 (1959)). The same is true here.

Even assuming arguendo this Court were to find Plaintiffs' allegations somehow fall within the purview of these right of publicity laws, such use would be purely incidental and not actionable. *See, e.g.*, *Schifano v. Greene Cnty. Greyhound Park, Inc.*, 624 So. 2d 178, 181 (Ala. 1993) (rejecting misappropriation claim at Alabama common law where "[t]here [was] no unique quality or value in the [plaintiffs'] likenesses that would result in commercial profit to the [defendant] simply from using a photograph that included them—unidentified and seated in a group") (citing Restatement (Second) of Torts § 652C cmt. d (1977)); *Aligo v. Time-Life Books, Inc.*, No. 94-20707, 1994 WL 715605, at *2 (N.D. Cal. Dec. 19, 1994) ("The rationale for this rule is that an incidental use has no commercial value."); *Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E.2d 859, 869–70 (Ind. Ct. App. 2013) (dismissing common law right of publicity claim under Indiana law because use of a person's name in a press release was incidental and provided no commercial benefit); *Harvey*, 154 N.E.3d at 305 (discussing "the mere incidental use of a person's name and likeness, which is not actionable, from appropriation

---

publication." *Davis*, 775 F.3d at 1180 & n.5 (citation omitted) (applying the test even though California courts had not expressly adopted it, observing that "the defense is widely recognized" across jurisdictions). The court may resolve the incidental use defense at the pleading stage. *See, e.g.*, *Aligo v. Time-Life Books, Inc.*, No. C 94-20707 JW, 1994 WL 715605, at *1–2 (N.D. Cal. Dec. 19, 1994) (holding incidental use doctrine barred plaintiff's right of publicity claim on a motion to dismiss).

of the benefits associated with the person's identity, which is.") (quotations and citations

omitted).  Indeed, the incidental use rule is essentially codified in some of the statutes at issue

here.[14]

     Here, the use of each Plaintiff's name as part of the list rental process is paradigmatic

incidental use:  the proportion of the list that relates to each of the individual Plaintiffs is

negligible and therefore not actionable by any of them as individuals.  As pled in the Amended

Complaint (*e.g.*, Am. Compl. ¶ 3), each Plaintiff's name would be only one of many names that

allegedly appear within the Mailing List, and thus insignificant to the overall List.  Accordingly,

for this additional, independent reason, this Court must dismiss Plaintiffs' Amended Complaint.

## III.  Accepting Plaintiffs' Right of Publicity Theory Would Raise Significant issues under the First Amendment and Equivalent State Protections.

     Construing right of publicity statutes to impose liability on TMBI for the mere inclusion

of truthful information—names and addresses—within an informational compilation would not

only be contrary to a common sense interpretation of right of publicity laws, but it would also

raise serious First Amendment issues, subjecting these statutes to strict scrutiny review and a

void for vagueness analysis.  Accordingly, the Court should avoid any application of these laws

to TMBI's speech as alleged.  See *Clark v. Martinez*, 543 U.S. 371, 380–81 (2005) (under

doctrine of constitutional avoidance, statutory constructions that "would raise a multitude of

constitutional problems" should be avoided).

     TMBI's alleged speech in this instance—factual information about Plaintiffs' relationship

to TMBI—is plainly fully-protected speech under the First Amendment.  "[T]he creation and

---

[14] Ohio exempts "[t]he use of the persona of an individual solely in the individual's role as a member of the public if the individual is not named or otherwise singled out as an individual . . . ."  Ohio Rev. Code § 2741.09(4).  Likewise, Washington exempts "use of an individual's or personality's name . . . when the use of the individual's or personality's name . . . is an insignificant, de minimis, or incidental use."  Wash. Rev. Code § 63.60.070(6).

dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011).  Courts have repeatedly applied that principle in the context of lists of individuals, such as phone books and directories of professionals.  *See, e.g.*, *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 962 (9th Cir. 2012) (finding "yellow pages" were fully protected, non-commercial speech); *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1388 (N.D. Ill. 2016) (holding online directory of attorneys constitutes fully protected, non-commercial information); *Bergen v. Martindale-Hubbell, Inc.*, 285 S.E.2d 6, 6–7 (Ga. 1981) (First Amendment and Georgia Constitution protect publication of attorney directory).

The fact that TMBI's Mailing List is allegedly sold for profit (*i.e.*, Am. Compl. ¶ 2) does not transform TMBI's speech into commercial speech or lessen its constitutional protection.  *See Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952) ("That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment."); *Hilton v. Hallmark Cards*, 599 F.3d 894, 905 n.7 (9th Cir. 2010) ("Hallmark's card is not advertising the product; it *is* the product.  It is sold for a profit, but that does not make it commercial speech for First Amendment purposes.") (emphasis in original); *ETW*, 332 F.3d at 924 ("Speech is protected even though it is carried in a form that is sold for profit.").

Of course, a correct reading of these statutes—one that rejects Plaintiffs' contorted and expansive reading—avoids these constitutional concerns.  Because Plaintiffs' claims would necessitate not only rewriting these statutes but doing so in a potentially unconstitutional manner, this Court should not accept Plaintiffs' invitation to do so.[15]

---

[15] Even if this Court were to conduct a constitutional analysis, the First Amendment would forbid burdening TMBI's fully protected speech.  Right of publicity laws are subject to strict scrutiny because they target certain content and speakers, and under a strict scrutiny analysis, right of

**IV.    Dismissal With Prejudice Is Warranted.**

Plaintiffs have already had the opportunity to amend their pleading once and there are no further amendments Plaintiffs could make that would cure the fundamental defects in their right of publicity claims.  This court may dismiss with prejudice if it believes that amendment would be futile or would unnecessarily expend judicial resources.  *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, No. 08-7508, 2009 WL 3346674, at *2 (S.D.N.Y. Oct. 15, 2009).  *See also Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (affirming dismissal with prejudice in the absence of any indication that a plaintiff could provide additional allegations leading to a different result).  TMBI has identified fatal legal deficiencies in Plaintiffs' Amended Complaint that are inherent to the incongruity of claiming the "list rental" process violates any right of publicity laws.  Accordingly, any attempt by Plaintiffs to amend would be futile and Plaintiffs' Amended Complaint should be dismissed with prejudice.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, the Court should dismiss this case in its entirety, with prejudice.

Dated:  May 23, 2022

Respectfully Submitted,
DENTONS US LLP

By: <u>/s/ *Kristen C. Rodriguez*</u>

Sandra D. Hauser
DENTONS US LLP
1221 Avenue of Americas
New York, New York 10020-1089
sandra.hauser@dentons.com
Tel: (212) 768-6802

---

publicity laws would not be considered narrowly tailored to serve compelling state interests under Plaintiffs' theory.  *See*, *e.g.*, *Reed v. Town of Gilbert, Ariz.,* 576 U.S. 155, 163 (2015); *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011); *Sarver v. Chartier*, 813 F.3d 891, 903, 906 (9th Cir. 2016).

Natalie J. Spears (*Pro Hac Vice*)
Kristen C. Rodriguez (*Pro Hac Vice*)
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606-6404
Tel:  (312) 876-8000
Fax:  (312) 876-7934
natalie.spears@dentons.com
kristen.rodriguez@dentons.com


*Counsel for Defendant*
*Trusted Media Brands, Inc.*

/121377097

## **CERTIFICATE OF SERVICE**

I, Kristen C. Rodriguez, hereby certify that on Monday, May 23, 2022, a true and correct copy of Defendant Trusted Media Brands, Inc.'s Memorandum of Law in support of its Motion to Dismiss the First Amended Complaint was served in accordance with the Federal Rules of Civil Procedure, via electronic service, upon:

Phil Fraietta, Counsel for Plaintiffs
888 Seventh Avenue New York, NY 10019
pfraietta@bursor.com

Dated:  May 23, 2022
        New York, NY

      /s/ *Kristen C. Rodriguez*
Kristen C. Rodriguez, *Pro Hac Vice*
DENTONS US LLP
233 S. Wacker Dr., Ste. 5900
Chicago, Illinois 60606
Tel:  (312) 876-8000
Fax:  (312) 876-7934
kristen.rodriguez@dentons.com

*Counsel for Defendant Trusted Media Brands, Inc.*