**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARTHA M. BOHNAK, DEBBIE JO TERZOLI, BELINDA LOOMIS, CYNTHIA BROWN, CONNIE JOHNSON, DONNA BROWN, KATHLEEN HELTON, LESLIE TRANTUM, TAMMY JOHNSON, SUE JONES, and JUAN SEPULVEDA, individually and on behalf of all others similarly situated, | Case No. 7:21-cv-07476-NSR |
| Plaintiffs, | |
| v. | |
| TRUSTED MEDIA BRANDS, INC, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITON TO DEFENDANT'S**
**<u>MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ................................................................................................................ 1

FACTUAL ALLEGATIONS ............................................................................................... 2

ARGUMENT ....................................................................................................................... 3

I.      PLAINTIFFS STATE A COGNIZABLE CLAIM UNDER THE
        MISAPPROPRIATION STATUTES ...................................................................... 3

        A.      The Misappropriation Statutes Prohibit Use of a Person's Name
                and Other Indicia of Identity "On or In" a Product or Service
                Without Consent ....................................................................................... 3

        B.      The Illinois and Virginia Right of Publicity Statutes Are Materially
                Distinguishable from the Misappropriation Statutes at Issue Here ...................... 5

        C.      TMBI Used Plaintiffs' Names "On or In" Its Data Brokerage
                Products ..................................................................................................... 9

        D.      TMBI Misappropriated the Value of Plaintiffs' Names ...................................... 11

        E.      The Misappropriation Statutes Do Not Require "Public"
                Misappropriation ...................................................................................... 15

        F.      TMBI's Incidental Use Argument Is Inapplicable ................................................ 19

II.     THE FIRST AMENDMENT DOES NOT PROTECT TMBI'S
        CONDUCT ............................................................................................................. 22

CONCLUSION .................................................................................................................. 25

## TABLE OF AUTHORITIES

**PAGE(S)**

### CASES

*Aligo v. Time-Life Books, Inc.*,
  1994 WL 715605 (N.D. Cal. Dec. 19, 1994)....................................................... 21

*Bergen v. Martindale-Hubbell, Inc.*,
  285 S.E.2d 6 (Ga. 1981) ............................................................................... 24

*Berger v. Capitol Color Mail, Inc.*,
  38 Va. Cir. 261 (1995).................................................................................. 7

*Boelter v. Advance Mag. Publishers Inc.*,
  210 F. Supp. 3d 579 (S.D.N.Y. 2016) ................................................... passim

*Boelter v. Hearst Commc'ns, Inc.*,
  192 F. Supp. 3d 427 (S.D.N.Y. 2016) ....................................................... 2, 23, 24

*Bosley v. Wildwett.com*,
  310 F. Supp. 2d 914 (N.D. Ohio 2004) .................................................. 4, 6, 8

*Bravado Int'l Grp. Merch. Servs., Inc. v. Sean Broihier & Assocs.*,
  2015 WL 13915022 (C.D. Cal. Aug. 17, 2015) ......................................... 4, 6

*Brooks v. Thomson Reuters Corp.*,
  2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ................................... 9, 10, 14, 17

*Callahan v. PeopleConnect, Inc.*,
  2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) .................................. 9, 12, 16, 20

*Canessa v. J. I. Kislak, Inc.*,
  235 A.2d 62 (N.J. Super. Ct. Law. Div. 1967) ........................................... 14

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*,
  447 U.S. 557 (1980) .................................................................................. 22, 24

*Chapman v. Yellow Cab Coop.*,
  875 F.3d 846 (7th Cir. 2017) ................................................................... 18

*Cohen v. Facebook*,
  798 F. Supp. 2d 1090 (N.D. Cal. 2011) ..................................................... 14

*Collection Bureau of San Jose v. Rumsey*,
  6 P. 3d 713 (Cal. 2000)............................................................................ 9

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
  21 P.3d 797 (Cal. 2001).................................................................... passim

*Contest Promotions, LLC v. City & Cnty. of San Francisco*,
  2015 WL 4571564 (N.D. Cal. July 28, 2015) ........................................ 25

*Daniels v. FanDuel, Inc.*,
  109 N.E.3d 390 (Ind. 2018) ............................................................. 23

*Davis v. Facebook, Inc.*,
  956 F.3d 589 (9th Cir. 2020) ........................................................... 14

*Del Amo v. Baccash*,
  2008 WL 4414514 (C.D. Cal. Sept. 16, 2008) .................................... 13

*Dex Media W., Inc. v. City of Seattle*,
  696 F.3d 952 (9th Cir. 2012) ........................................................... 24

*Dobrowolski v. Intellius, Inc.*,
  2018 WL 11185289 (N.D. Ill. May 21, 2018)...................................... 10

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
  472 U.S. 749 (1985) ................................................................. 23, 24

*Dwyer v. American Express Co.*,
  652 N.E.2d 1351 (Ill. App. Ct. 1995) .................................................. 8

*ETW v. Jireh Pub., Inc.*,
  332 F.3d 915 (6th Cir. 2003) .................................................. 8, 20, 25

*Fraley v. Facebook, Inc.*,
  830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................. 12, 13, 15, 20

*Gaylor v. Vill. Of Ringwood*,
  363 Ill. App. 3d 543 (2006) .............................................................. 6

*Harvey v. Sys. Effect, LLC*,
  154 N.E.3d 293 (Ohio Ct. App. 2020)............................................ 14, 20

*Hilton v. Hallmark Cards*,
  599 F.3d 894 (9th Cir. 2010) ........................................................... 25

*Huston v. Hearst Commc'ns, Inc.*,
  2022 WL 385176 (CD Ill. Feb. 7, 2022) ........................................... 5, 6

*In re Clearview AI, Inc., Consumer Priv. Litig.*,
  2022 WL 444135 (N.D. Ill. Feb. 14, 2022)...................................... 4, 5, 6

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019)................................................ 17

*In re Trans Union Corp. Priv. Litig.*,
  326 F. Supp. 2d 893 (N.D. Ill. 2004)..................................................................... 14

*J.R. v. Walgreens Boots Alliance, Inc.*,
  470 F. Supp. 3d 534 (D.S.C. 2020) ........................................................................ 17

*Joseph Burstyn, Inc. v. Wilson*,
  343 U.S. 495, (1952) .............................................................................................. 25

*Kellman v. Spokeo, Inc.*,
  2022 WL 1157500 (N.D. Cal. Apr. 19, 2022)............................................... 9, 15, 17

*King v. Gen. Info. Svcs., Inc.*,
  903 F. Supp. 2d 303 (E.D. Pa. 2012)...................................................................... 24

*Knapke v. PeopleConnect Inc.*,
  553 F. Supp. 3d 865 (W.D. Wash. 2021) ...................................................... 17, 18, 20

*Kolebuck-Utz v. Whitepages Inc.*,
  2021 WL 1575219 (W.D. Wash. April 2021) .......................................................... 20

*Maloney v. T3Media, Inc.*,
  853 F.3d 1004 (9th Cir. 2017) ............................................................................... 23

*Maremont v. Susan Fredman Design Grp., Ltd.*,
  2011 WL 6101949 (N.D. Ill. Dec. 7, 2011)............................................................. 14

*Martinez v. ZoomInfo Techs. Inc.*,
  2022 WL 1078630 (W.D. Wash. Apr. 11, 2022) ..................................................... 13

*MetLife Invs. USA Ins. Co. v. Zeidman*,
  734 F. Supp. 2d 304 (E.D.N.Y. 2010) .................................................................... 17

*Miller v. Collectors Universe, Inc.*,
  159 Cal. App. 4th 988 (2008) ................................................................................ 12

*Motchenbacher v. R.J. Reynolds, Tobacco Co.*,
  498 F.2d 821 (9th Cir. 1974) ........................................................................... 13, 14

*Nelson v. Harrah's Entm't Inc.*,
  2008 WL 2444675 (N.D. Ill. June 13, 2008)........................................................... 14

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1222 (N.D. Cal. 2014)..................................................................... 21

*Playboy Enters., Inc. v. Dumas*,
  960 F. Supp. 710 (S.D.N.Y. 1997) ......................................................................... 25

*Radio Today, Inc. v. Westwood One, Inc.*,
   684 F. Supp. 68 (S.D.N.Y. 1988) ...................................................................... 20

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) .......................................................................................... 25

*Schifano v. Greene Cnty. Greyhound Park, Inc.*,
   624 So. 2d 178 (Ala. 1993)............................................................................... 21

*Sessa v. Ancestry.com Operations Inc.*,
   561 F. Supp. 3d 1008 (D. Nev. 2021)........................................................ 12, 23

*Shibley v. Time, Inc.*,
   45 Ohio App. 2d 69 (Ohio Ct. App. 1975) ........................................................ 8

*Siegel v. Zoominfo Techs., LLC*,
   2021 WL 4306148 (N.D. Ill. Sept. 22, 2021) .................................................. 18

*Stayart v. Google, Inc.*,
   710 F. 3d 719 (7th Cir. 2013) .......................................................................... 19

*Trans Union Corp. v. F.T.C.*,
   267 F.3d 1138 (D.C. Cir. 2001) ...................................................................... 24

*U.S. News & World Rep., Inc. v. Avrahami*,
   1996 WL 1065557 (Va. Cir. Ct. June 13,1996) ................................................ 7

*United Reporting Pub. Corp. v. Cal. Highway Patrol*,
   146 F.3d 1133 (9th Cir. 1998) ......................................................................... 24

*United States v. Turkette*,
   452 U.S. 576 (1981) ......................................................................................... 17

*Upper Deck Co. v. Panini Am., Inc.*,
   469 F. Supp. 3d 963 (S.D. Cal. 2020) ............................................................. 20

*Vrdolyak v. Avvo*,
   206 F. Supp. 3d 1384 (N.D. Ill. 2016).............................................................. 24

*Vugo, Inc. v. City of New York*,
   931 F.3d 42 (2d Cir. 2019) ......................................................................... 22, 25

*Westminster Presbyterian Church of Muncie v. Yonghong Cheng*,
   992 N.E. 2d 859 (Ind. Ct. App. 2013) ............................................................. 21

*Zacchini v. Scripps-Howard Broadcasting Co.*,
   433 U.S. 562 (1977) ......................................................................................... 11

*Zoll v. Jordache Enterprises Inc.*,
   2003 WL 1964054 (S.D.N.Y. Apr. 24, 2003) ................................................................ 19

**STATUTES**

15 U.S.C. §§ 1681 ................................................................................................................ 24

765 Ill. Comp. Stat. Ann. 1075/5 ............................................................................... 6, 7, 17

765 Ill. Comp. Stat. Ann. 1075/30(a) ................................................................................... 6

Ala. Code § 6-5-771 ........................................................................................................... 15

Ala. Code § 6-5-772(a) ......................................................................................................... 1

Cal. Civ. Code § 3344 ........................................................................................................... 3

Cal. Civ. Code § 3344(a) ..................................................................................... 1, 9, 12, 15

N.R.S. § 597.770(1) .............................................................................................................. 1

N.R.S. § 597.790 ................................................................................................................ 16

Ohio Rev. Code § 2741.01(B)(1) ......................................................................................... 1

Ohio Rev. Code § 2741.02(B)(1) ......................................................................................... 8

Ohio Revised Code § 2741.01 ....................................................................................... 6, 15

RCW 63.60.050 ..................................................................................................................... 1

S.D. Codified Laws § 21-64-1(1) ......................................................................................... 1

S.D. Codified Laws § 26-64-1(3) ....................................................................................... 15

Va. Code. Ann. § 8.01-40 ..................................................................................................... 7

Wash. Rev. Code Ann. § 63.60.010 ................................................................................... 15

**OTHER AUTHORITIES**

1 Rights of Publicity and Privacy § 5:19 (2d ed.) ............................................................. 10

1 Rights of Publicity and Privacy § 5:50 (2d ed.) ............................................................. 11

## INTRODUCTION

Plaintiffs and putative Class members subscribed to magazines Defendant Trusted Media Brands, Inc. ("Defendant" or "TMBI") published.  These subscribers gave TMBI their names and home addresses to receive their subscriptions. Without the knowledge or consent of its subscribers, TMBI packages its subscribers' information into a valuable product comprised of data that, *inter alia*, individually identifies their age, race, religion, politics, and other highly sensitive personal attributes ("Data Brokerage Products").  TMBI then sells, rents, and exchanges these products with its "Data Brokerage Clients," earning a hefty profit monetizing its customers' identities.

This conduct violates the laws of Alabama, California, Indiana, Nevada, Ohio, South Dakota, Washington, and Puerto Rico (collectively the "Misappropriation Statutes").  With the exception of Puerto Rico's, each statute explicitly prohibits "the use of the indicia of identity of a person, <u>on or in</u> products, goods, merchandise, or services . . . ."[1]

Although Plaintiffs' claims arise from TMBI's "use" of their identities "on or in" the Data Brokerage Products, Defendant's Motion to Dismiss (the "Motion" or "Mot.") conflates this prong with a separate, independent prong of the statutes that prohibits the use of one's likeness for the purpose of endorsing, advertising, or promoting a product.  But this is not a false advertising or apparent endorsement case; it is a misappropriation case.  TMBI's arguments for dismissal thus

---

[1]      *See* Ala. Code § 6-5-772(a) (prohibiting use of the "indicia of identity of a person on or in products, goods, merchandise, or services entered into commerce in this state … without consent"); Cal. Civ. Code § 3344(a) (holding liable "[a]ny person who knowingly uses another's name . . . in any manner, on or in products, merchandise, or goods. . . ."); IC 32-36-1-2(1) (defining use of a likeness for a "commercial purpose" to include "the use of an aspect of a personality's right of publicity as follows: (1) On or in connection with a product . . . ."); N.R.S. § 597.770(1) ("Commercial use includes the use of the name . . . of a person on or in any product, merchandise or goods. . . ."); Ohio Rev. Code § 2741.01(B)(1) (defining "commercial purpose" as "the use of or reference to an aspect of an individual's persona in any of the following manners: (1) On or in connection with a place, product, merchandise, goods, services, or other commercial activities . . . ."); S.D. Codified Laws § 21-64-1(1) (prohibiting use of one's name "in connection with a product, merchandise, goods, service, or commercial activity" without consent); RCW 63.60.050 (prohibiting "the use of a living or deceased individual's or personality's name . . . on or in goods, merchandise, or products. . . .").  Puerto Rico uses slightly different phrasing, defining "commercial purpose" as "[t]he use of a person's likeness in connection with an advertisement, offer, or sale of a product, merchandise, good or service in the market." 32 L.P.R. § 3151(h).

miss the mark, and its cited legal authority is largely inapposite. TMBI's cases do not speak to the statutory basis of Plaintiffs' claims under the first prong of the Misappropriation Statutes, which prohibits the use of a person's identity "on or in" a product without consent, *regardless* of whether the identity is used to advertise that product.

TMBI also says that its trafficking subscribers' personal information is protected by the First Amendment. But selling and renting its subscribers' data—separate and distinct from its core publication business—is a quintessential example of the sort of *commercial* speech that a legislature may properly regulate. Indeed, this District has repeatedly rejected identical First Amendment defenses in cases addressing the exact same conduct at issue here. *See, e.g.*, *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 598 (S.D.N.Y. 2016) ("*AMPI*"); *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016) ("*Hearst*").

Plaintiffs' First Amended Complaint (ECF No. 17) ("FAC") alleges that TMBI has commercialized its subscribers' information by selling them to its Data Brokerage Clients without consent, in violation of the Misappropriation Statutes. These factual allegations state claims for relief under each of the Misappropriation Statutes. Accordingly, the Motion should be denied.

## FACTUAL ALLEGATIONS

TMBI is an international media conglomerate and publishes some of the most widely circulated magazines in the United States. FAC ¶ 1. As such, TMBI maintains a vast digital database comprised of its customers' names, basic demographic information (*e.g.*, home address), and magazine subscription histories and preferences. FAC ¶ 50.

TMBI discloses its magazine subscribers' names and other identifying information, including but not limited to those subscribers' home addresses, to data aggregators and appenders, which then provide TMBI with supplemental information including a subscriber's sex, age, race, and political party, among other data points. FAC ¶ 51. TMBI packages this composite identity

information—which, on a per record basis includes TMBI's own subscriber data in addition to what it obtains from third parties—into its Data Brokerage Products, which it sells, licenses, rents to, and exchanges with Data Brokerage Clients.  FAC ¶ 52.

These Data Brokerage Products are sold in, among other places, Alabama, Indiana, California, Nevada, Ohio, South Dakota, Washington, and Puerto Rico.  FAC ¶ 53.  TMBI also trades its Data Brokerage Products for access to data cooperatives' subscription list databases. FAC ¶ 54.  It does so without its subscribers' consent, written or otherwise, to use their names and likenesses on or in connection with its Data Brokerage Products.  FAC ¶ 57.  Its customers remain unaware that their identities are being trafficked on the open market in this way.  *Id.*

## ARGUMENT

### I.   PLAINTIFFS STATE A COGNIZABLE CLAIM UNDER THE MISAPPROPRIATION STATUTES

#### A.   The Misappropriation Statutes Prohibit Use of a Person's Name and Other Indicia of Identity "On or In" a Product or Service Without Consent

Each Misappropriation Statute explicitly prohibits at least two things: (i) the use of a person's name "on or in" a product, and (ii) the use of a person's name "for purposes of advertising or selling, or soliciting purchase of" a product.  *See*, *e.g.*, Cal. Civ. Code § 3344 (the "California Statute"); *see also* fn. 1.  These prongs are distinct, and only the first prong is at issue here.

The California Supreme Court's decision in *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 21 P.3d 797 (Cal. 2001) illustrates the distinction.  In *Comedy III*, the defendant argued that it had not violated the California Statute because the defendant did not use the plaintiff's likeness "for the purpose of advertising, selling, or soliciting the purchase of, products or services."  *Id.* at 801. The California Supreme Court rejected that argument, explaining that the California Statute "makes liable any person who, without consent, uses [a plaintiff's likeness], either (1) 'on or in' a product, *or* (2) 'in advertising or selling' a product."  *Id.* at 802 (emphasis in original).  "The two

uses are not synonymous: in the apt example given by the Court of Appeal, there is an obvious difference between 'placing a celebrity's name on a 'special edition' of a vehicle, and using that name in a commercial to endorse or tout the same or another vehicle.'" *Id.*

The same logic applies here. While TMBI *could* use Plaintiffs' names and identities to explicitly advertise its products or services, *this* case is about its use of their identities "on or in" its Data Brokerage Products that the company sells and rents. Thus, contrary to TMBI's assertion, under the Misappropriation Statutes, Plaintiffs are not required to plead an "infringing commercial use" "for a covered commercial purpose, particularly advertising, marketing, merchandising, endorsement, or promotion." Mot. at 7-8. Rather, using Plaintiffs' likenesses *on* or *in* the product or service – in this case, the Data Brokerage Products that TMBI sells and rents – is *itself* violative. *See, e.g.*, *In re Clearview AI, Inc., Consumer Priv. Litig.*, 2022 WL 444135, at *11 (N.D. Ill. Feb. 14, 2022) (holding under California Statute that "plaintiffs need not allege that defendants used their photos or likenesses for purposes of advertising, selling, or soliciting").

The same is true of the other Misappropriation Statutes, which (except Puerto Rico's, as explained below) independently prohibit the use of a person's identity "on" or "in" a product, and *additionally* prohibit (in a separate second prong of the disjunctively written "commercial purpose" definitions of each of the Statutes) the use of a person's name to promote or advertise a product or service. *See*, *e.g.*, *Bravado Int'l Grp. Merch. Servs., Inc. v. Sean Broihier & Assocs.*, 2015 WL 13915022, at *8-9 (C.D. Cal. Aug. 17, 2015) (agreeing Indiana Statute is "not limited solely to the separate use of a likeness to advertise a good or service" but also "bars the use of a likeness 'on or in connection with a product . . .'"); *Bosley v. Wildwett.com*, 310 F. Supp. 2d 914, 922-23 (N.D. Ohio 2004) (agreeing selling video containing plaintiff's image violated Ohio Statute "even if [the video] does not reference Defendants' other wares" for advertising purposes).

4

TMBI argues that "the (possible) communication of people's names as part of a data set or mailing list, in and of itself, makes no 'use' of the commercial value of an individual's identity within the meaning of right of publicity laws." Mot. at 6. That is incorrect. First, as discussed, each Statute specifically defines "commercial purpose" to include the use of a name "on or in" a product, without requiring the *additional* use of that name for advertising or endorsement purposes (uses which are prohibited in the second, independent prong of the definition). *See* fn. 1, *supra*. Thus, the Court should reject TMBI's attempts to conflate the two. Second, TMBI includes its subscribers' names "on or in" lists that are sold, licensed, rented, exchange, and otherwise disclosed to its various Data Brokerage Clients. The Data Brokerage Products constitute products or goods, and their rentals constitute services, that are sold for profit. FAC ¶¶ 50-52, 59. As such, TMBI indisputably uses its subscribers' names and other identifying information "on or *in* products, goods, merchandise, or services"—a "commercial purpose" specifically delineated in each of the Misappropriation Statutes. *See Clearview AI*, 2022 WL 444135, at *11 (stating claim for commercial use of photographs by alleging "the Clearview defendants knowingly used their photos by accessing the Clearview database for a profit"). Because it uses its subscribers' names in a product without their consent, TMBI violates the Misappropriation Statutes.

**B.    The Illinois and Virginia Right of Publicity Statutes Are Materially Distinguishable from the Misappropriation Statutes at Issue Here**

Defendant cites two principal authorities for its ill-founded contention that its data business does not violate the Misappropriation Statutes. The first, *Huston v. Hearst Commc'ns, Inc.*, 2022 WL 385176 (CD Ill. Feb. 7, 2022), is a recent decision where a district court held that Defendant's competitor Hearst's use of subscriber information on mailing lists was not a "commercial purpose" covered by the Illinois Right of Publicity Act ("IRPA").

*Huston* has little bearing here because it dealt with a different statute containing different

statutory language.   With the exception of the Puerto Rico statute (discussed below), each Misappropriation Statute *specifically* prohibits the unconsented use of a person's identity "on or in connection with a … product."  Ohio Revised Code § 2741.01; *see also* fn. 1, *supra* and FAC ¶¶ 7-28 (detailing relevant portions of the Alabama, California, Indiana, Nevada, Ohio, South Dakota, and Washington Statutes (same)).   In contrast, IRPA does *not* contain this specific prohibition.   *See* 765 Ill. Comp. Stat. Ann. 1075/30(a).   Rather, IRPA defines "commercial purpose" as including three things—i.e., "the public use or holding out of an individual's identity (i) on or in connection with *the offering for sale or sale* of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising."  765 Ill. Comp. Stat. Ann. 1075/5 (emphasis added).  The Misappropriation Statutes do not contain such language limiting the "use" prong.

Plaintiffs respectfully disagree with *Huston*'s holding under IRPA and, to the extent the Court finds it has any relevance here, believe the decision was wrongly decided.[2]  But whether *Huston*'s statutory analysis was right (as Defendant believes) or wrong (as Plaintiffs would argue) is beside the point because the Misappropriation Statutes here *explicitly* forbid the unconsented-to use of a person's identity "on or in connection with a … product," without any requirement that such use be connected to advertising, endorsement, or promotion of a product.  *See*, *e.g.*, *Comedy III*, 21 P.3d at 801-02; *In re Clearview AI*, 2022 WL 444135, at *11; *Bravado Int'l*, 2015 WL 13915022, at *8-9; *Bosley*, 310 F. Supp. 2d at 922-23.[3]

---

[2]      *Huston* is currently on appeal to the U.S. Court of Appeals for the Seventh Circuit. The *Huston* court only considered the IRPA's ban on commercial uses "in connection with the *offer for sale* of any product or service to a third party[,]" *Huston*, 2022 WL 385176, at *3 (emphasis added), while ignoring the IRPA's separate prohibition on uses of one's identity "on or in connection with the offering for sale *or* sale" of a product, good, or service, 765 Ill. Comp. Stat. Ann. 1075/5 (emphasis added).  The court's failure to consider the two prongs separately contravenes the principle that Illinois statutes should be interpreted "[i]n order that no part of the statute be rendered superfluous or meaningless."  *Gaylor v. Vill. Of Ringwood*, 363 Ill. App. 3d 543 (2006).
[3]      Admittedly, the analysis is different with respect to the Puerto Rico statute, which, in contrast to the other Misappropriation Statutes, defines "commercial purpose" as "[t]he use of a person's likeness *in connection with* an

Defendant's other principal authority, *U.S. News & World Rep., Inc. v. Avrahami*, 1996 WL 1065557 (Va. Cir. Ct. June 13,1996), concerning Virginia's Right of Publicity Statute, is similarly unpersuasive.  Mot. at 9-10.  Like the Illinois statute in *Huston*, Virginia's publicity statute is materially different from the Misappropriation Statutes.  The Virginia statute *does not* explicitly prohibit the non-consensual use of an individual's name "on or in" a product, good, or service.  Rather, the Virginia statute prohibits the non-consensual use of a name "for purposes of trade" without elaboration.  *See* Va. Code. Ann. § 8.01-40; *Berger v. Capitol Color Mail, Inc.*, 38 Va. Cir. 261 (1995) ("What constitutes use of a picture for 'purposes of trade' is not expressly defined by the statute.").  *Avrahami* provides no help in interpreting the Misappropriation Statutes. Beyond this, the opinion engages in no statutory analysis to support its "conclusion[] of law" that "[t]he inclusion of an individual name as part of a mailing list constitutes neither a use for an advertising purpose nor a use for the purpose of trade, as defined by the statute." *Avrahami*, 1996 WL 1065557, at *7.  Indeed, the *Avrahami* court—like the *Huston* opinion—conflates the "advertising" and "purpose of trade" prongs of the statute as both covering advertising and nothing else.  *See id.* (citation omitted) ("The inclusion of a name as part of a larger mailing list for purposes of a direct mail solicitation does not constitute use of that name in the promotion of an actual product or service itself.").  *Avrahami* doesn't affect whether Plaintiffs have stated claims under the Misappropriation Statutes.

---

advertisement, offer, or *sale* of a product, merchandise, good or service in the market." 32 L.P.R. § 3151(h) (emphasis added).  Arguably—and unlike any of the other Misappropriation Statutes—this bears some resemblance to the language in IRPA, which defines "commercial purpose" as "the public use or holding out of an individual's identity (i) on or *in connection with the* offering for sale or *sale* of a product, merchandise, goods, or services." 765 ILCS 1075/5 (emphasis added).  Thus, at best, a textual analysis of the IRPA could have some bearing to the claim brought under the Puerto Rico statute—but *not* to claims brought under the other Misappropriation Statutes, each of which specifically prohibits the use of identities "on or in" products. In any event, under *both* the IRPA and Puerto Rico statute, it should be straightforward that Plaintiffs' names and identity information are being used "in connection with" the "sale" of the Data Brokerage Products because TMBI is *actually selling* their names and identity information to its Data Brokerage Clients.  How much more "connected" to a "sale" could their identities possibly be than this?

Defendant also seeks to analogize the FAC's claims to decisions involving common law publicity claims, which (again) involve "endorsement" claims rather than "use" claims. These too are fundamentally inapposite. For example, *Shibley v. Time, Inc.*, 45 Ohio App. 2d 69, 72 (Ohio Ct. App. 1975) (cited at Mot. at 10) involved an inherently dissimilar common law claim for invasion of privacy, which the court, citing *Prosser*, explained was limited to "public" displays indicating endorsement. But the Ohio Statute, like all the Misappropriation Statutes, (a) has no "public display" requirement, and (b) sweeps far more broadly than just endorsement claims, also encompassing the use of an individual's persona "on or in connection with a place, product, merchandise, goods, services, or other commercial activities." Ohio Rev. Code § 2741.02(B)(1); *see also Bosley*, 310 F. Supp. 2d at 922-23 (agreeing sale of video with plaintiff's image violative "even if [the video] does not reference Defendants' other wares" for advertising purposes).[4]

The FAC's factual allegations present clear-cut, statutorily based entitlements to relief arising from TMBI's *non-consensual* inclusion of Plaintiffs' and the Classes' identifying information "on or in" TMBI's Data Brokerage Products. By contrast, cases like *Shibley* turn on the unique limitations of common law claims that are irrelevant to this case. *See also Dwyer v. American Express Co.*, 652 N.E.2d 1351 (Ill. App. Ct. 1995) (cited in Mot. at 10) (finding failure to state Illinois common law intrusion upon seclusion claim without any reference to IRPA). The Misappropriation Statutes, enacted after extensive deliberations and input from industry experts, reflect the judgment of these states to proscribe exactly the conduct that TMBI is alleged to have committed here. That certain common law requirements like those in *Shibley* were not included in the Statutes is unsurprising—but their omission matters. The plain statutory text must control.

---

[4] Defendant asserts that the Ohio common law is consistent with the Ohio Statute. Mot. at 10 n.4 (citing *ETW v. Jireh Pub., Inc.*, 332 F.3d 915 (6th Cir. 2003)). However, *ETW* does not discuss either of the material differences between the common law privacy claim discussed above and the Ohio Statute.

This Court should decline TMBI's invitation to second-guess the considered judgment of these legislative bodies by reading unwritten requirements into the Statutes.

### C.    TMBI Used Plaintiffs' Names "On or In" Its Data Brokerage Products

Defendant next attempts to argue that it did not use any Plaintiff's name "on or in" its Mailing Lists within the meaning of the Misappropriation Statutes.  Mot. at 11.  That is wrong.

Besides *Huston*, which is inapposite for the reasons explained above, Defendant cites *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021), where a court rejected a California right of publicity claim that involved the defendant's unconsented, direct sale of the plaintiff's personal information to third parties.  Mot. at 12.  There, the court found that the defendant did not "appropriate" the plaintiffs' identities because it did not use them either as "endorsements" of its product or for "promotional purposes, *i.e.*, to advertise or promote a separate product or service."  *Brooks*, 2021 WL 3621837, at *4.  But the Northern District of California has found *Brooks* unpersuasive and rejected the exact argument raised by Defendant here:

> Spokeo argues that there can be no "appropriation" when the product at issue "is" the name, likeness, or personal information. I rejected that theory above as a matter of Ohio law, and there is no difference in the analysis when it comes to California law. I recognize that one judge in this district has held that similar behavior does not qualify as appropriation under the law. *See* [*Brooks,* 2021 WL 3621837, at *3]. But that same judge has, more recently, found those same types of allegations actionable (though, admittedly, framed as an issue of cognizable injury rather than whether it amounts to "appropriation"). *See* [*Callahan*, 2021 WL 5050079, at *11].

*Kellman v. Spokeo, Inc.*, 2022 WL 1157500, at *9 (N.D. Cal. Apr. 19, 2022).  Notably, the *Brooks* court did not acknowledge the California right of publicity statute's language prohibiting the use of persons' identities "*on or in* products, merchandise, or goods" without consent.  Cal. Civ. Code § 3344(a) (emphasis added).  *See also Collection Bureau of San Jose v. Rumsey*, 6 P. 3d 713, 719 (Cal. 2000) (recognizing a court must "give effect to the plain and express language of a statute").  Further, the *Brooks* court did not cite or discuss the California Supreme Court's decision in

*Comedy III*, which expressly held that the two prongs "are not synonymous," and which confirmed that selling t-shirts with a likeness printed on them constituted a prohibited use of a likeness "'on . . . products, merchandise, or goods' within the meaning of the statute," even though there was no advertisement or promotion.  21 P.3d at 801-02.  Compounding that flaw, the *Brooks* court appears to have given dispositive weight to the fact that, historically, right of publicity claims address false endorsement or "promotion" claims.  *See Brooks*, 2021 WL 3621837, at *4 ("Virtually all right of publicity cases involve the use of a person's name or likeness to advertise a separate product or service.") (collecting cases).  A historical focus on false endorsements or promotions does not give the court leeway to ignore the express statutory language—*i.e.*, prohibiting the use of identities "on or in" commercial products—on which Plaintiffs' claims are based.  The California Supreme Court's binding interpretation of the California Statute in *Comedy III* controls.[5]

Last, Defendant attempts to read into *Comedy III* that the Misappropriation Statutes require that the purpose of a use "on or in" a product be to "drive attention to that product."  Mot. at 13-14.  That does not comport with the plain language of the Misappropriation Statutes, which distinguish between the "advertising" or "endorsement" prong and the "use" prong.  Again, "[t]he two uses are not synonymous."  *Comedy III*, 21 P.3d at 802.  Defendant refers to (Mot. at 13) McCarthy, 1 Rights of Publicity and Privacy § 5:19 (2d ed.), which states that, in the endorsement context "[t]he unpermitted use of a person's identity to draw attention to a product or advertisement infringes the right of publicity."  But that is not the only possible infringement.  As McCarthy later elaborates, in the misappropriation context, "infringement of the right of publicity by commercial appropriation [a different injury] is triggered by an injury to a commercial proprietary interest."

---

[5]       Defendant also cites *Dobrowolski v. Intellius, Inc.*, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018).  But *Dobrowolski*, like *Huston*, applied the IRPA, a materially distinguishable statute from those at issue here.  As discussed, the Misappropriation Statutes, unlike the IRPA, do not contain language arguably limiting the "use" prong to the "offering or for sale or sale" of a product.  *Dolobrowski* can thus be disregarded.

*Id.* § 5:63.[6]  Here, Plaintiffs' claims are for "infringement of the right of publicity by commercial appropriation[,]" which is founded "upon the unauthorized taking of a valuable commercial property right which defendant has benefited from without compensation to the owner[s]."  *Id.*  Thus, Plaintiffs need not allege that their names were used to draw attention to a separate product.  Their allegations plainly state claims under the Misappropriation Statutes' "use" prongs, which have no "driv[ing] attention" or other "advertising" requirement whatsoever.

### D.      TMBI Misappropriated the Value of Plaintiffs' Names

Defendant next argues that there is no infringing commercial use of Plaintiffs' names here because "TMBI has not misappropriated any value associated with Plaintiffs' names, given that Plaintiffs' names are not being used to sell, promote, or draw attention to anything."  Mot. at 14-17.  That is legally incorrect and plainly contradicted by the pleadings.

TMBI cites *Comedy III* and *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 576 (1977) to contend that the Misappropriation Statutes serve solely and specifically to prevent the "misappropriation of the commercial value of the holder's identity to advertise, promote, or influence the sale of some other product."  Mot. at 15.  While that may be true as to celebrities such as the Three Stooges or the "Human Cannonball" Hugo Zacchini – *Comedy III* mentions that the statute serves to "protect the fruits of a performing artist's labor" (*Comedy III*, 21 P.3d. at 803) – it is inaccurate as to non-celebrity plaintiffs.

Defendant essentially argues that a claim cannot be stated under the Misappropriation Statutes unless there is a provable nexus between a defendant's non-consensual use of a plaintiff's identity and the monetary damages suffered by a plaintiff.  But the Misappropriation Statutes

---

[6]        *See also* McCarthy, 1 Rights of Publicity and Privacy § 5:50 (2d ed.) (stating that misappropriation doctrine is "usually invoked by a plaintiff who has what he considers a valuable commercial 'thing' which he sees that another has taken or appropriated at little cost" with no reference to advertising).

purposefully encompass claims of non-celebrity individuals whose monetary damages would be difficult, if not impossible, to quantify when their likenesses are appropriated without their consent.  For example, the California Statute was promulgated to broaden the scope of common law misappropriation claims to cover non-celebrities who otherwise would not be able to prove damages at common law.  *See Callahan v. PeopleConnect, Inc.*, 2021 WL 5050079, at *15 (N.D. Cal. Nov. 1, 2021) (Section 3344(a)) (noting the Statute "established a concrete remedy for the little man with a minimum of $300 payment.") (quoting *Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1002 (2008)).  Indeed, "at common law, even individuals whose likenesses did not have inherent value could assert a property interest in their likeness." *Sessa v. Ancestry.com Operations Inc.*, 561 F. Supp. 3d 1008, 1022 (D. Nev. 2021) (citation omitted).  As such, the Misappropriation Statutes sweep more broadly than just compensating plaintiffs for the economic injury sustained by a wrongful appropriation of their personas on a dollar-for-dollar basis.

Under the California Statute, for example, a plaintiff states a claim by alleging (1) that the defendant used the plaintiff's identity; (2) the appropriation of the plaintiff's name for the defendant's advantage; (3) lack of consent; (4) that the plaintiff was harmed; (5) a knowing use by the defendant; and (6) a direct connection between the use and commercial purpose.  *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 803 (N.D. Cal. 2011).  Here, Defendant is essentially arguing that Plaintiffs have not alleged an actual injury, the fourth element of a statutory cause of action.  *See, e.g.* Mot. at 16 ("Where, as here, Plaintiffs do not allege that they were harmed by appropriation of the *property* right in their personas, depriving *them* of their identities' *economic value*, they do not and cannot state a claim under the statute.").  But in *Fraley*, Judge Koh recognized that based on the plain language of § 3344(a) a plaintiff meets the burden to allege injury simply by alleging the first three elements of the statutory cause of action:

> The statutory text … can be read to presume that a person whose name, photograph, or likeness is used by another for commercial purposes without their consent is "injured as a result thereof." Consistent with this reading, at least one court has suggested, after surveying California court decisions, that "courts generally presume that the fourth element of the applicable test has been established if there is sufficient evidence to prove the first three elements."

830 F. Supp. 2d at 807-808 (quoting *Del Amo v. Baccash*, 2008 WL 4414514, at *6 (C.D. Cal. Sept. 16, 2008)).   Indeed, *Del Amo* made clear that under the California Statute, "so long as a plaintiff has demonstrated (1) use of plaintiff's identity, (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise, and (3) a lack of consent, a plaintiff need not demonstrate injury."   2008 WL 4414514, at *6.

Plaintiffs have made these threshold allegations with respects to all claims under each of the eight Misappropriation Statutes and thus, as to each, have plausibly stated a claim for relief. And regardless of any applicable legal presumptions, Plaintiffs' entitlement to relief is adequately supported by the well-pleaded facts.   Besides pleading lack of consent to TMBI's inclusion of their personas in TMBI's Data Brokerage Products, Plaintiffs allege that their personas have "significant commercial value" (FAC ¶ 56); and that TMBI "reaped, and continues to reap, significant profits from its nonconsensual sales of Data Brokerage Products." *Id.* ¶ 4, 59.

Similar allegations survived a comparable challenge to the sufficiency of a plaintiff's pleading in *Martinez v. ZoomInfo Techs. Inc*., 2022 WL 1078630, at *4 (W.D. Wash. Apr. 11, 2022).   In *Martinez*, the Court determined the plaintiff had sufficiently pled an economic injury by alleging, as Plaintiffs do here, that the plaintiff's personality rights had inherent value and that the defendant reaped profits through its appropriation.   *Id.*; *see also Fraley*, 830 F. Supp. 2d at 810 ("At this stage, however, the Court finds [plaintiffs'] allegations of provable commercial value sufficient to survive a motion to dismiss and accordingly denies Defendant's 12(b)(6) motion with respect to the § 3344 claim.");   *c.f. Motchenbacher v. R.J. Reynolds, Tobacco Co.*, 498 F.2d 821,

825-827, n.11 (9th Cir. 1974) ("[T]he appropriation of the identity of a relatively unknown person may result in economic injury or may itself create economic value in what was previously valueless."); *cf. Davis v. Facebook, Inc.*, 956 F.3d 589, 600 (9th Cir. 2020) (recognizing under California Statute that defendant profited from unauthorized use of plaintiffs' personal data was sufficient injury to confer Article III standing, even where no economic loss has been suffered).

Defendant's cases are inapposite.  Neither *Cohen v. Facebook*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) nor *Brooks*, 2021 WL 3621837, at *5 (cited in Mot. at 16) address *Davis* or *Mochenbacher*, the key Ninth Circuit non-celebrity wrongful appropriation cases that firmly establish that a non-celebrity may plead a cause of action for appropriation of likeness by pointing to a defendant's pecuniary gain from the appropriation.  *See Mochenbacher*, 498 F.2d 821, 825 n.11 (9th Cir. 1974) (citing *Canessa v. J. I. Kislak, Inc.*, 235 A.2d 62, 75 (N.J. Super. Ct. Law. Div. 1967)).[7]  *Cohen* and *Brooks*' failure to consider these precedential authorities is further reason why they should not be followed.[8]  *In re Trans Union Corp. Priv. Litig.*, 326 F. Supp. 2d 893, 895-96, 902 (N.D. Ill. 2004) is similarly unavailing—that case involved only common law misappropriation claims (which, again, have no bearing on the Statutes) where the parties generally agreed that "one who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy."  *Id.* at 902.  And while Defendant cites *Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293, 308 (Ohio Ct. App. 2020) (Mot. at 16), here "because

---

[7]    *See also Canessa*, 235 A.2d at 75 ("In the case of one not a public figure … we have a situation where there is no pecuniary or market value in the name, likeness, etc., of such a person until the defendant, by unlawfully appropriating the property rights in these aspects of plaintiff's personality, establishes a pecuniary value and a market for them (though the plaintiff has never attempted to market them). In such a case, the damages would be measured by the value to the defendant…").

[8]    Defendant also cites *Nelson v. Harrah's Entm't Inc.*, 2008 WL 2444675, at *1 (N.D. Ill. June 13, 2008) and *Maremont v. Susan Fredman Design Grp., Ltd.*, 2011 WL 6101949, at *6 (N.D. Ill. Dec. 7, 2011) for the contention that an IRPA claim and an Illinois common law right to privacy claim, respectively, require more than "bare invasion" or "use of the plaintiff's name" to state a claim.  These cases are not persuasive because, as discussed both *supra* and *infra*, the Misappropriation Statutes are materially distinguishable from both IRPA and the common law.

[Defendant] uses [Plaintiffs'] persona[s] for commercial gain ... it reasonably implies that [their] persona[s] do[] have at least some commercial value. That is precisely the theory endorsed by a federal district court in Ohio in a decision that *Harvey* relied on[.]" *Kellman*, 2022 WL 1157500, at \*6 (N.D. Cal. Apr. 19, 2022); *see also infra* § I.F.

### E.       The Misappropriation Statutes Do Not Require "Public" Misappropriation

Defendant argues that Plaintiffs have not stated claims under the Misappropriation Statutes because they require that Plaintiffs allege a "public" use, which, according to Defendant, Plaintiffs have not done.  Mot. at 18-20.  Defendant is wrong—both about the pleading requirements and the facts pled.  To state a claim under the Misappropriation Statutes, a plaintiff need only allege the non-consensual use of her identity for a commercial purpose.  *See* fn. 1.  By the Statutes' plain language, there is no public use requirement.  *See id.*; *see also Fraley*, 830 F. Supp. 2d at 806 (under the California statute "a person whose name, photograph, or likeness is used by another for commercial purposes without their consent is 'injured as a result thereof.'").  And regardless, Plaintiffs have plausibly stated violations of the Misappropriation Statutes by alleging Defendant used their names and other identity information in Defendant's Data Brokerage Products.

The California Statute does not contain the term "publicity."  *See* Cal. Civ. Code 3344(a). Neither does the Washington Statute.  *See* Wash. Rev. Code Ann. § 63.60.010, *et. seq.*  The Alabama, Indiana, Ohio, and South Dakota statutes define the term "Right of Publicity," but without any reference to a public use.  Ala. Code § 6-5-771; IC § 32-36-1-7; Ohio Rev. Code. Ann. § 2741.01; S.D. CODIFIED LAWS 26-64-1(3).[9]  The Nevada Statute similarly includes the term

---

[9]       The Alabama Statute defines the "Right of Publicity" as "any indicia of identity, both singular and plural, of every person, whether or not famous, which right endures for the life of the person and for 55 years after his or her death, whether or not the person commercially exploits the right during his or her lifetime." Ala. Code § 6-5-771.  The Ohio Statute defines the term as "the property right in an individual's persona to use the individual's persona for a commercial purpose."  South Dakota defines the term as a "personality's property interest in the personality's name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism."  And the Indiana Statute defines the "Right of Publicity" as "a personality's property interest in the personality's: (1) name; (2) voice; (3)

"right of publicity" without reference to public use, simply stating that it exists "in the name, voice, signature, photograph or likeness of every person."   N.R.S. § 597.790.   Puerto Rico's Statute considers publication of an individual's persona only as a factor the court considers in determining damages.   *See* 32 L.P.R. § 3151 ("The court may award damages taking into account … the value of the detrimental effect that the defendant act would have caused to the plaintiff[.]").   However, even then, the Puerto Rico Statute separately provides liquidated damages as an alternative basis without regard to publication.   *Id.*   None of the Statutes requires that a defendant's non-consensual use of a plaintiff's identity be "public" to be actionable.   And importantly, none of the "commercial purpose" definitions in the Misappropriation Statutes require a public use.   *See* fn. 1.

Tellingly, Defendant does not quote (or even reference) the text of the Statutes in this section.   Instead, Defendant proffers its self-serving public use requirement based on the bald assertion that the enforcement of the Misappropriation Statutes against Defendant "twists these right of publicity statutes beyond recognition[.]"   Mot. at 20.   But Plaintiffs simply ask the Court to enforce the Statutes' plain language.   The legislatures of Alabama, California, Indiana, Nevada, Ohio, Puerto Rico, South Dakota, and Washington have all determined that their residents have a right to control the non-consensual use of their indicia of identity in products and services.   These legislatures drafted the use prongs of the "commercial purpose" definitions of their Misappropriation Statutes without any reference to a "public use."   This reflects a deliberate policy choice by those jurisdictions' legislatures.   For example, as discussed above, the California Statute was promulgated to broaden the scope of common law misappropriation claims to cover non-celebrities who otherwise would not be able to prove damages at common law.   (*See supra* § I.D. (citing *Callahan*, 2021 WL 5050079, at *15).)   That the legislatures opted not to impose a public

---

signature; (4) photograph; (5) image; (6) likeness; (7) distinctive appearance; (8) gestures; or (9) mannerisms."

use requirement is consistent with the Statutes' broad application, and Defendant offers no ground to second-guess those legislative judgments. *See United States v. Turkette*, 452 U.S. 576, 580 (1981) (internal quotations omitted) ("If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive."). If the legislatures had intended to add a public use requirement, they would have done so.[10] But they did not. Plaintiffs assert the claims explicitly provided for in the Statutes' text.

Lacking any support within the plain language of the Misappropriation Statutes, Defendant cites to *J.R. v. Walgreens Boots Alliance, Inc.*, 470 F. Supp. 3d 534, 551 (D.S.C. 2020) for the proposition that, as to South Carolina's common law wrongful appropriation of personality tort, the non-consensual use of the plaintiff's name must be "public" to be actionable. But like many of Defendant's citations, *J.R.* construed common law claims which have no bearing on the Statutes' interpretation. The approach in *J.R.* was consistent with the South Carolina precedent on which it exclusively relied. *See id.* This is of no moment here. Neither is Defendant's citation to *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 781 (N.D. Cal. 2019), which involved a common law claim and did not discuss the California Statute. And *MetLife Invs. USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d 304 (E.D.N.Y. 2010) interpreted the IRPA, which, as discussed above, *does* explicitly require a "public use or holding out" of a plaintiff's identity. *See id.* at 311-12; 765 ILCS 1075/5.[11]

Here, Plaintiffs' claims do not arise under the common law or the IRPA. The more apt decision is *Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865, 876 (W.D. Wash. 2021). In

---

[10]      *See e.g.,* IRPA, 765 ILCS 1075/5 (defining "commercial purpose" as "the public use or holding out of an individual's identity (i) on or in connection with *the offering for sale or sale* of a product, merchandise, goods, or services…" (emphasis added)).

[11]      Defendant also cites *Brooks*, 2021 WL 3621837. But *Brooks* is inapposite for the reasons discussed *supra* § I.C-D – it is non-binding, did not acknowledge nor analyze both the relevant statutory language and the binding opinion in *Comedy III*, and the Northern District of California has since rejected its reasoning. *See Kellman*, 2022 WL 1157500, at *9.

*Knapke*, the defendant asserted that based on Ohio's common law, the plaintiff failed to state an Ohio Statute claim because she had not alleged anyone saw her name and photo, which she claimed were appropriated for a commercial purpose.  Agreeing that the public use element was not part of the Ohio Statute, the Court stated "[Defendant] fails to explain why this element from common law false light claims should be imputed into [the Ohio Statute]. While courts may look to common law claims to help understand the [the Ohio Statute], none have imputed a new element into the [Statute] from common law tort.  The Court finds no valid basis to write a new provision into the [Ohio Statute]."  *Id.  Knapke* is instructive here.  The Misappropriation Statutes, as drafted, reflect the reasoned judgment of their states' legislatures.  It is no accident that these legislatures did not include a "public use" requirement.  The Statutes should be enforced as written.

Notwithstanding, even if a public use element were required—and it is not—the FAC's well-pleaded allegations make clear that Defendant "sells, licenses, rents, exchanges, and otherwise discloses" its Data Brokerage Products—in which Plaintiffs names and other indicia of identity appear—on the open market and to its downstream Data Brokerage Clients.  FAC ¶¶ 3, 53, 57.  Plaintiffs further allege these efforts to commercialize Plaintiffs' indicia of identity as included in the Data Brokerage Products were successfully monetized, reaping Defendant "significant profits." *Id.* ¶ 59.  In short, Plaintiffs have alleged Defendant's "public use" of their identities in myriad ways. *See Siegel v. Zoominfo Techs., LLC*, 2021 WL 4306148, at *4 (N.D. Ill. Sept. 22, 2021) (analyzing under IRPA, finding allegations that defendant used plaintiff's identity "to advertise, promote, and offer for sale its monthly subscription for its database" satisfied the "holding out" aspect of "commercial purpose").  Thus, even if Defendant's incorrect formulation of the Misappropriation Statutes were right, Plaintiffs have plausibly alleged claims for relief. *See Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) ("To the extent

the district court demanded that complaints plead facts—not only facts that bear on the statutory elements of a claim, but also facts that bear on judicially established standards—it was mistaken … It is enough to plead a plausible claim, after which 'a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint[.]'").

F.   **TMBI's Incidental Use Argument Is Inapplicable**

TMBI also attempts to invoke the incidental use defense as grounds for why Plaintiffs' claims should be dismissed.  But TMBI has not established that this defense exists for all of the statutes at issue, and, even if the defense were available, whether the use of a likeness is incidental is a factual question that cannot be resolved on the pleadings.  *See*, *e.g.*, *Zoll v. Jordache Enterprises Inc.*, 2003 WL 1964054, at *20 (S.D.N.Y. Apr. 24, 2003) (finding incidental use was a jury question unsuitable for resolution on a motion to dismiss).

In any case, Plaintiffs' FAC defeats any affirmative defense of incidental use at this stage. The FAC alleges that TMBI "sold, licensed, rented, exchanged, and otherwise disclosed to its various Data Brokerage Clients…[o]n a per record basis… information [that] includes basic identifying information about each of TMBI's subscribers (name, address, magazines subscribed to, among other such details) along with additional information received from the data aggregators and appenders[,]" (FAC ¶ 52) and that "[a]s the subjects of commercial transactions, the aspects of Plaintiffs' identities that Defendant uses on or in connection with its products, services, or other commercial activities have significant commercial value." FAC ¶ 56.  TMBI's use of Plaintiffs' and the proposed Class Members' names and identifying information is not incidental to TMBI's data brokerage business; rather, it is essential.  *See Stayart v. Google, Inc.*, 710 F. 3d 719, 723 (7th Cir. 2013) (finding plaintiffs stated privacy claim where there is a "substantial rather than incidental connection between the use [of plaintiff's name, likeness, etc.] and defendant's commercial purpose").  The Data Brokerage Products consist of TMBI's subscribers' identities,

19

including their contact and demographic information.  These Products' primary value is the fact

that they contain the identities of and information about real individuals, and a means to contact

them.  The inherent commercial value of these lists is evidenced by the fact that they are bought,

sold, and traded.  *See Kolebuck-Utz v. Whitepages Inc.*, 2021 WL 1575219, at *2 (W.D. Wash.

April 2021) ("To assert [an Ohio Misappropriation] claim, Plaintiff must only plead that there is

some value in associating a good or service with her identity.") (citing *Harvey*, 154 N.E. 3d. at

306) (analyzing Ohio Misappropriation Statute); *see also Knapke*, 553 F. Supp. 3d at 877 ("[T]here

is no express element that someone in Ohio view the misappropriated likeness.").

At the pleading stage, Plaintiffs state a claim for relief over TMBI's purported defense of

incidental use.  *See Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68, 75 (S.D.N.Y. 1988)

(denying motion to dismiss where Defendant could not sustain incidental use as basis to avoid

liability for violating New York Civil Rights law); *Upper Deck Co. v. Panini Am., Inc.,* 469 F.

Supp. 3d 963, 986 (S.D. Cal. 2020) (denying motion to dismiss claim under California Statute

where plaintiff alleged that "the use of [Michael] Jordan's name was not incidental.").

TMBI's repeated argument that each individual is just one of many names on the list does

not change the analysis.  The right of publicity is the "inherent right of *every human being* to

control the commercial use of his or her identity."  *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915,

928 (6th Cir. 2003) (emphasis added); *see also Callahan*, 2021 WL 5050079, at *14 ("The

statutory text makes no mention of preexisting value, and in fact can be read to presume that a

person whose name, photograph, or likeness is used by another for commercial purposes without

their consent is 'injured as a result thereof.'") (citing *Fraley*, 830 F. Supp. 2d at 808) (analyzing

California Statute).  TMBI appropriates this right from each of its subscribers by including their

names and identity information in its Data Brokerage Products without consent.  That it does so

on a massive scale does not excuse its conduct.  *See Perkins v. LinkedIn Corp.,* 53 F. Supp. 3d 1222, 1255 (N.D. Cal. 2014) ("LinkedIn's alleged use of Plaintiffs' names and likenesses was critical, not incidental, to Defendant's commercial purpose" where it allegedly sent email solicitations to subscribers' contacts and email contained subscribers' names and likenesses).

TMBI relies on a host of inapposite cases to support its incidental use defense.  In *Schifano v. Greene Cnty. Greyhound Park, Inc.*, 624 So. 2d 178, 181 (Ala. 1993), the court found there was no commercial value to defendant in the display of a group photo where plaintiffs were one of many individuals pictured while seated.  By contrast, here, there is obvious commercial value in gathering and selling every individual's name, address, and other identifying information in Data Brokerage Products.  Indeed, the lists would have no value if TMBI's Data Brokerage Clients could *not* use each individual's identifying information "on a per record basis." FAC ¶ 52.  Unlike a group photo, which is sold for its overall gestalt, the information in TMBI's databases is *only* valuable if *individuals* can be identified and directly sent advertisements based on the information in the Products.  Likewise, *Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E. 2d 859, 896-70 (Ind. Ct. App. 2013), involved the mention of an individual's name in a press release concerning a matter of public concern, rather than an attempt to monetize plaintiffs' indicia of identity, as here. Similarly, *Harvey* "distinguished 'the mere incidental use of a person's name and likeness, [(in this case the not-for-profit use of the plaintiff's image in internal training materials)] which is not actionable, from appropriation of the benefits associated with the person's identity, which is.'" 154 N.E.3d at 305.  *Aligo v. Time-Life Books, Inc.,* 1994 WL 715605 (N.D. Cal. Dec. 19, 1994) also changes nothing.  The defendant there claimed that the incidental inclusion of plaintiff's likeness in an infomercial was non-actionable because there was no direct connection between the use and the commercial purpose.  Here, a stark difference exists—TMBI

purposefully monetized Plaintiffs' names and information in its Data Brokerage Products.  And finally, *U.S. News* is also unpersuasive for the same reason it is irrelevant in Defendant's argument that list rental is not an infringing commercial use of a person's name: the Virginia statute analyzed in *U.S. News* is materially different from the Misappropriation Statutes and does not explicitly prohibit the non-consensual use of an individual's name "on or in" a product, good, or service.

## II.    THE FIRST AMENDMENT DOES NOT PROTECT TMBI'S CONDUCT

TMBI argues that the Misappropriation Statutes are content-based regulations that must satisfy strict scrutiny to comply with the First Amendment.  That is wrong.  The Misappropriation Statutes regulate TMBI's commercial speech, and thus need only satisfy intermediate scrutiny, which they readily do.  TMBI's 'as applied' challenge fails.

It is black-letter law that "[t]he Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 562-63 (1980).  Commercial speech is "expression related solely to the economic interests of the speaker and its audience." *Central Hudson*, 447 U.S. at 561.  Regulation of commercial speech is subject only to intermediate scrutiny, not strict scrutiny. *See Vugo, Inc. v. City of New York*, 931 F.3d 42, 44 (2d Cir. 2019).

There can be no serious dispute that TMBI's Data Brokerage Products constitute commercial speech.  Indeed, in a comprehensive and well-reasoned decision in *AMPI*, Judge Buchwald concluded that Condé Nast's identical transmission of subscribers' identity information to third-parties was commercial in nature and thus "should receive intermediate scrutiny." *AMPI*, 210 F. Supp. 3d at 597.  *AMPI* concerned putative class action claims challenging list brokering practices under Michigan's Video Rental Privacy Act ("VRPA"), a statute that prohibits sellers of certain written materials from disclosing readers' identities to third-parties.  Judge Buchwald reasoned that the speech at issue "relays an individual's economic decisions, elucidates an

individual's economic preferences, and 'facilitates the proposal of new commercial transactions' on the part of third parties." *Id.* (quoting *Hearst*, 192 F. Supp. 3d at 445). Accordingly, Judge Buchwald rejected TMBI's contention that the sale of its subscribers' identity information—the **exact same conduct at issue here**—was non-commercial speech warranting strict scrutiny.

The contours of the Misappropriation Statutes are identical to those of VRPA: The Misappropriation Statutes all only cover the non-consensual use of the indicia of identity for *commercial purposes.* *See Sessa v. Ancestry.com Operations Inc.*, 561 F. Supp. 3d at 1032 ("[O]ur cases clarify that a publicity-right claim may proceed when a likeness is used non-consensually on merchandise or in advertising.") (citing *Maloney v. T3Media, Inc*., 853 F.3d 1004, 1016 (9th Cir. 2017)). Areas not at issue here, that historically implicate the First Amendment—newsgathering, the arts, politics, and the like—are expressly carved out of the Misappropriation Statutes' reach.[12] Rather, the speech at issue is limited to identity information obtained from a commercial transaction (the subscription to a magazine), and is of interest to only the subscriber, TMBI, and TMBI's Data Brokerage Clients, not the public writ large. *Cf. Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759, 762-63 (1985) (a "credit report concerns no public issue," but rather is speech of "purely private concern" that is "solely motivated by the desire for profit" and is thus "of less First Amendment concern"). Moreover, TMBI uses these lists for the express purpose of fostering other commercial transactions by third parties, and perhaps most saliently, to generate profit. Thus, exactly as in *AMPI*, "the disclosure of [subscriber identifying information] to data miners and the sale of [the same] to organizations that use it for solicitation purposes is speech 'related solely to the economic interests of the speaker and its audience.'"

---

[12] The Misappropriation Statutes exempt use of a likeness in art, news reporting, sports broadcasting, and political campaigns from the scope of regulated conduct to avoid First Amendment violations. *See, e.g., Daniels v. FanDuel, Inc.*, 109 N.E.3d 390, 396 (Ind. 2018) ("These enumerated exceptions, including 'material with newsworthy value,' represent an obvious attempt to avoid constitutional issues with the statute.").

*AMPI*, 210 F. Supp. 3d at 597 (quoting *Central Hudson*, 447 U.S. at 561).[13]

TMBI ignores this precedent and instead relies on easily distinguishable cases involving phone books and directories.  In *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 965 (9th Cir. 2012), for instance, the court found that phone books include both commercial speech (e.g., advertisements) as well as non-commercial speech (e.g., information of public concern about community events).  *Vrdolyak v. Avvo*, an Illinois misappropriation case, applied the same analysis to a free and publicly accessible online directory of attorneys to hold that the directory information *itself* was non-commercial because "Defendant publishes non-commercial information and sells and places advertisements within that information." 206 F. Supp. 3d 1384, 1389 (N.D. Ill. 2016). And in *Bergen v. Martindale-Hubbell, Inc.*, the plaintiff sought "to enjoin defendant from publishing its directory" but the directory itself was "protected by the First Amendment."  285 S.E.2d 6, 7 (Ga. 1981).  By contrast, here, the alleged speech is *purely* commercial as set forth above, and does not convey information of public concern but rather information "of purely private concern," *Dun*, 472 U.S. at 759, to TMBI and its Data Brokerage Clients. *See also AMPI*, 210 F. Supp. 3d at 598; *Hearst*, 192 F. Supp. 3d at 445.  *Dex Media* and *Vrdolyak* did not suggest that the aggregate identity information of private individuals constitutes a matter of public concern.

Defendant additionally argues that "[t]he fact that TMBI's Mailing List is allegedly sold for profit does not transform TMBI's speech into commercial speech or lessen its constitutional

---

[13]         Indeed, the Misappropriation Statutes are analogous to laws that regulate how consumer information gathered in credit reports may be disseminated, which courts have uniformly analyzed under the commercial speech doctrine. *See*, *e.g*, *King v. Gen. Info. Svcs., Inc.*, 903 F. Supp. 2d 303, 307 (E.D. Pa. 2012) (in challenge to Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*., holding that "[t]he appropriate test for analyzing the reduced First Amendment protection accorded to consumer report information is the Supreme Court's commercial speech doctrine"); *Trans Union Corp. v. F.T.C.*, 267 F.3d 1138, 1141 (D.C. Cir. 2001) (FTC's restrictions on the sale of consumer reports was commercial speech subject to intermediate scrutiny); *see also United Reporting Pub. Corp. v. Cal. Highway Patrol*, 146 F.3d 1133, 1137 (9th Cir. 1998), *rev'd on other grounds sub nom. Los Angeles Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32 (1999) ("United Reporting sells arrestee information to clients; nothing more…This is a pure economic transaction … comfortably within the core notion of commercial speech.").

protection."  But each of Defendant's cited cases dealt with the sale of *expressive materials* that are separately subject to stringent First Amendment protection.  Those Courts were simply noting that the sale of artistic or expressive materials does not change those materials' protected status.  *See Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501, (1952) ("That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment."); *Hilton v. Hallmark Cards*, 599 F.3d 894, 905 (9th Cir. 2010) (characterizing greeting card as "expression" and noting "Hallmark's card is not advertising the product; it is the product. It is sold for a profit, but that does not make it commercial speech for First Amendment purposes."); *ETW Corp.*, 332 F.3d at 925 ("The fact that expressive materials are sold does not diminish the degree of protection to which they are entitled under the First Amendment.").  If TMBI had published Plaintiffs' names as part of an article, this argument might have been persuasive.  But these holdings do not extend to the wholesale commercial use of Plaintiffs' identifying information separate and apart from Defendant's protected magazine publications.[14]

The Data Brokerage Products are commercial speech subject to intermediate scrutiny.[15]

## CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety.

---

[14]      In a footnote, TMBI cites *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), for the proposition that strict scrutiny should apply to the Misappropriation Statutes because the restrictions are content- and speaker-based.  "However, *Reed* does not concern commercial speech, and therefore does not disturb the framework which holds that commercial speech is subject only to intermediate scrutiny as defined by the *Central Hudson* test."  *Contest Promotions, LLC v. City & Cnty. of San Francisco*, 2015 WL 4571564, at *4 (N.D. Cal. July 28, 2015); *see also AMPI*, 210 F. Supp. 3d at 598 n.15. (Distinguishing *Reed* and noting: "we join numerous courts in applying *Central Hudson* to commercial speech following *Reed* and *Sorrell*.")  TMBI also cites *Sorrell*, the Second Circuit has explicitly held that "[f]ollowing *Sorrell*, this Court has continued to apply *Central Hudson*'s intermediate scrutiny test to commercial speech restrictions," including content-based ones.  *See Vugo*, 931 F.3d at 49-50.

[15]      Defendant does not argue against, and thus concedes, that the Misappropriation Statutes survive intermediate scrutiny.  *See, e.g. Playboy Enters., Inc. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be considered by a court.").  But to the extent the Court applies intermediate scrutiny, the Misappropriation Statutes survive.  *See, e.g.*, *AMPI*, 210 F. Supp. 3d at 601–02.

25

Dated:  June 22, 2022

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
      Philip L. Fraietta

Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
pfraietta@bursor.com

J. Eli Wade-Scott*
Michael W. Ovca*
**EDELSON PC**
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: (312) 589.6370
Fax: (312) 589.6378
ewadescott@edelson.com
movca@edelson.com

\**Pro hac vice* application forthcoming

*Counsel for Plaintiffs and the Proposed Classes*