**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARTHA M. BOHNAK, DEBBIE JO TERZOLI, BELINDA LOOMIS, CYNTHIA BROWN, CONNIE JOHNSON, DONNA BROWN, KATHLEEN HELTON, LESLIE TRANTUM, TAMMY JOHNSON, SUE JONES, and JUAN SEPULVEDA, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>TRUSTED MEDIA BRANDS, INC.,<br><br>    Defendant. | Civil Action No.: 21-7476 (NSR) |

**DEFENDANT TRUSTED MEDIA BRANDS, INC.'S**
**<u>REPLY  MEMORANDUM OF LAW</u>**
**<u>IN FURTHER SUPPORT OF ITS MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 2

    I.    Plaintiffs Cannot Allege Any Infringing Use Under the Right of Publicity Laws. ................................................................................................................ 2

        A.    Plaintiffs' Names Were Not Used "On or In" a Separate Product................ 2

        B.    List Rental Is Not an Infringing Commercial Use of a Person's Name. ............................................................................................................ 4

        C.    List Rental Does Not Infringe on the Property Right Protected by the Right of Publicity Laws. ........................................................................ 5

        D.    Plaintiffs' Claims Fail for Another Fundamental Reason In That Their Names Were Never Used Publicly. ...................................................... 7

    II.    At Most, Plaintiffs Allege a Non-Infringing Incidental Use of Their Identities. ................................................................................................................. 9

    III.    Accepting Plaintiffs' Right of Publicity Theory Would Violate the First Amendment and Equivalent State Protections. ...................................................... 10

CONCLUSION ................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aronson v. Dog Eat Dog Films, Inc.*,
   738 F. Supp. 2d 1104 (W.D. Wash. 2010) ................................................................................6

*Berry v. National Broadcasting Company, Inc.*,
   480 F.2d 428 (8th Cir. 1973) .....................................................................................................6

*Boelter v. Hearst Communications, Inc.*,
   192 F. Supp. 3d 427 (S.D.N.Y. 2016) ......................................................................................10

*Bosley v. Wildwett.com*,
   310 F. Supp. 2d 914 (N.D. Ohio 2004) ......................................................................................3

*Bravado v. Sean Broihier & Assocs.*,
   No. CV-14-03375, 2015 WL 13915022 (C.D. Cal. Aug. 17, 2015) ..........................................3

*Brooks v. Thomson Reuters Corp.*,
   No. 21-CV-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ............................................3

*Callahan v. PeopleConnect, Inc.*,
   No. 20-cv-09203, 2021 WL 5050079  (N.D. Cal. Nov. 1, 2021) ...............................................3

*In re Clearview AI, Inc., Consumer Privacy Litig.*,
   No. 21-cv-0135, 2022 WL 444135 (N.D. Ill. Feb. 14, 2022) .....................................................3

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
   25 Cal. 4th 387 (2001) ...............................................................................................................2

*Davis v. Electric Arts Inc.*,
   775 F.3d 1172 (9th Cir. 2015) ...................................................................................................9

*Davis v. Facebook, Inc.*,
   956 F.3d 589 (9th Cir. 2020) .....................................................................................................6

*Del Amo v. Baccash*,
   No. CV 07–663, 2008 WL 4414514 (C.D. Cal. Sept. 16, 2008) ...............................................6

*Dwyer v. American Express Co.*,
   652 N.E.2d 1351 (Ill. App. Ct. 1995) ........................................................................................5

*Fraley v. Facebook, Inc.*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011) .......................................................................................6

*Huston v. Hearst Communications, Inc.*,
  No. 21-CV-1196, 2022 WL 385176 (C.D. Ill. Feb. 7, 2022) ................................................1, 4

*Kellman v. Spokeo, Inc.*,
  No. 3:21-cv-08976, 2022 WL 1157500 (N.D. Cal. Apr. 19, 2022)..........................................3

*Knapke v. PeopleConnect Inc.*,
  553 F. Supp. 3d 865 (W.D. Wash. 2021)................................................................................8

*Martinez v. ZoomInfo Technologies, Inc.*,
  No. C21-5725 MJP . 2022 WL 1078630 (W.D. Wash. Apr. 11, 2022) ...............................6, 7

*Motschenbacher v. R. J. Reynolds Tobacco Co.*,
  498 F.2d 821 (9th Cir. 1974) ...................................................................................................6

*Reed v. Town of Gilbert, Ariz.*,
  576 U.S. 155 (2015)...............................................................................................................10

*Sessa v. Ancestry.com Operations Inc.*,
  No. 2:20-CV-02292, 2021 WL 4245359 (D. Nev. Sept. 16, 2021).........................................7

*Shibley v. Time, Inc.*,
  341 N.E.2d 337 (Ohio Ct. App. 1975).....................................................................................5

*Siegel v. Zoominfo Technologies, LLC*,
  No. 21 C 2032, 2021 WL 4306148 (N.D. I11. Sept. 22, 2021)................................................8

*State v. Tolliver*,
  19 N.E. 3d 870 (Ohio 2014).....................................................................................................8

*Stayart v. Google, Inc.*,
  710 F.3d 719 (7th Cir. 2013) ...................................................................................................9

*U.S. News & World Report, Inc. v. Avrahami*
  No. 95-1318, 1996 WL 1065557 (Va. Cir. Ct. June 13, 1996)............................................4, 5

**Statutes**

California Civil Code
  § 3344.......................................................................................................................................7, 9

Ohio Revised Code Annotated
  § 2741.01..................................................................................................................................3
  § 2741.09(A)(4) .......................................................................................................................9

Puerto Rico Laws Annotated Title 32
  § 3151....................................................................................................................................3, 9
  § 3154....................................................................................................................................6, 7

South Dakota Codified Laws
    § 21-64-1 ................................................................................................................................3

Virginia Code Annotated
    § 8.01-40 .................................................................................................................................4

Washington Revised Code
    § 63.60.010 *et seq.* ................................................................................................................6
    § 63.60.070(6) .........................................................................................................................9

**INTRODUCTION**

Plaintiffs fail to cite a single authority that supports their distorted interpretation of the right of publicity statutes at issue here. Unable to rely on a single case, the legislative history, or even just common sense, Plaintiffs resort to arguing that all the cases that specifically reject a claim like theirs are wrongly decided and "irrelevant," including *Huston v. Hearst Communications, Inc.*, 2022 WL 385176 (C.D. Ill. Feb. 7, 2022), which involved the same allegations presented here, and the same arguments made by the same Plaintiffs' counsel. Plaintiffs attempt to distance themselves from on-point authority by arguing that each statute (except Puerto Rico) contains a separate "prong" that is divorced from the *sine qua non* of a right of publicity claim—commercial activity to drive attention to a product to sell it. Not so. Every case Plaintiffs rely on involved use of a likeness ***to drive attention to a product to sell it***—such as printing the likeness of The Three Stooges on t-shirts, or famous musicians' likenesses on phone cases.

Plaintiffs attempt to manufacture supposed distinctions between their claims and the body of case law foreclosing their claims, highlighting slight language variances in the right of publicity laws—such as "in connection with the offering for sale . . . of a product," versus "in connection with the . . . sale of a product," versus "on or in products . . . entered into commerce," versus "for purposes of trade." But Plaintiffs do not explain how these distinctions could make any difference for purposes of determining whether Plaintiffs have stated a claim here. These so-called distinctions do not make a difference. There is no formulation of any right of publicity law that would permit Plaintiffs' claims to proceed here and open the floodgates of crippling litigation against companies for commonplace marketing practices. The Amended Complaint must be dismissed with prejudice.

**ARGUMENT**

**I.      Plaintiffs Cannot Allege Any Infringing Use Under the Right of Publicity Laws.**

**A.      Plaintiffs' Names Were Not Used "On or In" a Separate Product.**

Plaintiffs urge the Court to ignore decades of precedent holding that the private sale of subscriber lists does not violate the right of publicity on the grounds that those cases did not consider what the Plaintiffs call the "on or in" prong of the ROP Laws. Opp. at 3–5. But no matter what "prong" Plaintiffs seek to rely on, the laws at issue here all uniformly require that a plaintiff's identity be publicly used on or in, or in connection with, a separate product to drive commercial promotion of that product. The pivotal case that Plaintiffs cite for their theory, *Comedy III*, does not come close to suggesting that California's right of publicity statute (or any other right of publicity statute) could sweep so broadly to cover the (possible) communication of names and addresses as part of a mailing list. Opp. at 3. *Comedy III*, which involved the use of the likeness of The Three Stooges to sell t-shirts and lithographs, simply recognized the commonsense distinction between displaying someone's likeness *on* a product versus using that person's likeness in a television commercial or in a magazine ad *for* the product. Mot. at 13; *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 395 (2001) (defendant used plaintiff's likeness "on" "products, merchandise, or goods" by placing the likeness of the Stooges on t-shirts and lithographs). In reaching its holding, the court still conducted the separate product analysis for the "on or in" prong, as it was required to do. *See id.* (finding defendant "sold more than just the incorporeal likeness" of the Stooges by selling lithographs and t-shirts, which are "tangible personal property").[1] The defendant in *Comedy III* used the Stooges' likenesses to attract attention to their t-shirts, but here TMBI has not used Plaintiffs' names to attract attention to anything.

---

[1] That analysis is consistent with the grammatical function of the prepositions "on" and "in," which express the relationship of one thing to *something else*, as in "the wheels on the bus" or

The additional case law cited by Plaintiffs is equally misplaced because the cases all involved use of a *specific* individual's unique identity to *induce* a commercial transaction involving a *separate* product.  *Bravado v. Sean Broihier & Assocs.*, 2015 WL 13915022, at *8 (C.D. Cal. Aug. 17, 2015) ("It is [] the likeness itself that is being used to sell [other] items" such as postcards and cellphone cases); *Bosley v. Wildwett.com*, 310 F. Supp. 2d 914, 922 (N.D. Ohio 2004) (finding plaintiff's identity was "used . . . for a commercial purpose" under Ohio's right of publicity statute when her name, image, and likeness were "prominent[ly]" displayed on the cover of a video featuring her and others in a wet t-shirt contest, and "promotional images" of her were displayed online promoting a subscription service); *In re Clearview AI, Inc., Consumer Privacy Litig.*, No. 21-cv-0135, 2022 WL 444135 (N.D. Ill. Feb. 14, 2022) (holding that use of a specific individual's biometric identity to induce a purchase of a separate subscription service violated the right of publicity).  Unlike these other cases, Plaintiffs here do not allege that their specific unique identities were used by TMBI to *induce* any commercial transactions of a *separate* product, making this case like *Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021).[2]  Mot. at 12.  And for this fundamental reason, Plaintiffs' claims fail as a matter of law.

---

the "woman in the hat."  *See "In," Lexico.com*, https://www.lexico.com/en/definition/in; *"On," Lexico.com*, https://www.lexico.com/en/definition/on.  The phrase "in connection with," used in the Ohio, Puerto Rico, and South Dakota statutes, *expresses the same concept* and is defined as "linked or associated with something else."  *See* Ohio Rev. Code § 2741.01; P.R. Laws Ann. tit. 32, § 3151; S.D. Codified Laws § 21-64-1; *see "Connection," Lexico.com*, https://www.lexico.com/en/definition/connection.  (All sites last visited July 7, 2022.)

[2] *Kellman v. Spokeo, Inc.*, 2022 WL 1157500 (N.D. Cal. Apr. 19, 2022) has no bearing here (Opp. at 9).  Plaintiffs in *Kellman* alleged the critical fact—*promotional* use of their image or likeness in "free preview" *ads*—that is plainly not alleged here.  Plaintiffs cite *Kellman* for the explicitly speculative dicta within *Kellman* on how another judge might rule in a different case to support their proposition that *Brooks* is unpersuasive.  But the very case to which *Kellman* cites

### B.     List Rental Is Not an Infringing Commercial Use of a Person's Name.

Plaintiffs fail to cite a single authority to support their novel theory that the "on or in" language variances found across the right of publicity laws could encompass the commonplace list rental practice.  They offer no reasonable, much less persuasive, explanation why this Court should not follow the reasoning in *Huston* and *U.S. News & World Report, Inc. v. Avrahami* 1996 WL 1065557  (Va. Cir. Ct. June 13, 1996) in rejecting Plaintiffs' claims that the list rental practice violates right of publicity laws.  The consistent rejection of Plaintiffs' theory demonstrates why Plaintiffs have no claims—not that every court to consider an analogous claim was wrong.

All eight right of publicity laws at issue require the "use" of a specific identity for a covered commercial purpose.  Mot. at 6–8.  Plaintiffs, however, take the untenable position that the Illinois right of publicity statute at issue in *Huston*—which also prohibits the unauthorized "use" of identity "on or in connection with the offering for sale or sale of a product"—is somehow so different from the eight right of publicity statutes at issue here as to have "little bearing here." Opp. 5–6.  Yet, Plaintiffs fail to explain how slight variances in statutory language could change the analysis.  Plaintiffs cannot escape that *Huston's* holding is directly on point authority, and that its reasoning applies to all eight statutes at issue here.  Mot. at 8–9.

Nor can Plaintiffs overcome the holding in *U.S. News & World Report* by arguing that the Virginia statute employs slightly different language than the statutes here.  Opp. at 7.[3]  Contrary to their contention, the Virginia statute sweeps at least as broadly; it prohibits using an identity "for advertising purposes or for the purposes of trade," *i.e.*, for a commercial purpose.  Va. Code Ann. §

---

to in the dicta, *Callahan v. PeopleConnect, Inc.*, 2021 WL 5050079, at *15 (N.D. Cal. Nov. 1, 2021), also involved use of the image or name in *advertising*!

[3] The *Huston* court recognized *U.S. News & World Report* decision's applicability, citing it in its analysis of the Illinois law.  2022 WL 385176, at *3.

8.01-40.  *See* Opp. at 7.  Though Plaintiffs misleadingly cherry pick from *U.S. News & World Report* to argue that the court "conflate[d] the 'advertising' and 'purposes of trade' prongs of the Virginia statute as both covering advertising and nothing else," (*id.*), in reality, the court diligently analyzed both prongs of the statute and concluded that the private sale of mailing lists did not violate either of them.  1996 WL 1065557, at *6–7.  Plaintiffs' allegations mirror the defective claims made in *U.S. News & World Report*, and should be dismissed for the same reasons.

Finally, Plaintiffs try to avoid the application of those cases involving common law right of publicity claims that also rejected the claim that list rental practices violate the right of publicity, but provide no cognizable explanation why such cases are "irrelevant" to the statutory right of publicity claims in this case.  Opp. at 8.  Rather, cases such as *Shibley v. Time, Inc.*, 341 N.E.2d 337 (Ohio Ct. App. 1975), and *Dwyer v. American Express Co.*, 652 N.E.2d 1351 (Ill. App. Ct. 1995), reinforce that the right of publicity, in its various formulations, has *never* prohibited the communication, sale, or rental of subscriber mailing lists as alleged here.

### C. List Rental Does Not Infringe on the Property Right Protected by the Right of Publicity Laws.

Plaintiffs' claims fail for the additional, independent reason that TMBI did not misappropriate any value associated with any Plaintiff's name because no Plaintiff's name was ever used to sell, promote, or draw attention to the Mailing List.  Mot. at 14–17.

Plaintiffs misconstrue TMBI's argument—attempting to divert the Court's attention to the red herring argument that one need not be a celebrity to be protected by a right of publicity law.  Opp. at 11.  TMBI, however, is not arguing that Plaintiffs need to be celebrities to state claims under right of publicity laws.  Rather, the point is that Plaintiffs' claims must fail because they cannot allege that they were deprived of the economic value of their identities, since their specific identities were not used to make a sale.  Mot. at 16 (collecting cases).  Plaintiffs cannot rely on the

assertion that their privacy has been allegedly invaded to support a claim under the right of publicity laws here, as they attempt to do in their Amended Complaint.

Indeed, nothing in the statutory text, case law, or legislative history of any of the right of publicity laws suggests they were intended to protect a bare privacy interest in facts compiled about a person. *See, e.g.*, P.R. Law No. 139-2011 (July 13, 2011) (codified at P.R. Laws Ann. Title 32, § 3154) (Decl. of K. Rodriguez, Ex. A) (contrasting Puerto Rico's statutory "right to publicity," which "provides the individual with a proprietary right over what their identity is," with the "right to privacy," which protects "information . . . people have about that individual, their communications, body and thoughts"); *Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp. 2d 1104, 1113 (W.D. Wash. 2010) (describing the "unauthorized use" of the "persona[]" as an infringement of the property right codified in Wash. Rev. Code § 63.60.010 *et seq.*); *Berry v. National Broadcasting Company, Inc.*, 480 F.2d 428, 430 (8th Cir. 1973) (noting that South Dakota recognized the "right of privacy" as defined in the Restatement (Second) of Torts, which included appropriation of another person's name or likeness).

Plaintiffs' reliance on *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 806, 809 (N.D. Cal. 2011)—which involved the use of plaintiffs' identities in online *advertisements* that falsely conveyed their personal endorsement of Facebook's advertisers, products, and services—is unavailing. Opp. at 12–13. In *Fraley*, the plaintiffs alleged they "were economically injured when denied compensation" for the use of their identities in Sponsored Stories *ads*. *Id.* at 797, 806. This is the garden variety sort of claim right of publicity statutes were meant to protect—and completely unrelated to the claim Plaintiffs are seeking to make here.[4] *Martinez v. ZoomInfo Technologies,*

---

[4] Plaintiffs' additional cited authority is also unavailing. *Motschenbacher v. R. J. Reynolds Tobacco Co.* involved a race car driver whose likeness and uniquely designed car were used without his consent to advertise cigarettes—the very type of claim protected by the right of

-6-

*Inc.*, 2022 WL 1078630, at *3–4 (W.D. Wash. Apr. 11, 2022), is also inapposite. There, plaintiff alleged she was denied economic value from the non-consensual use of her name and likeness to *advertise* defendant's products, a theory of liability that right of publicity laws were meant to protect. *Id.* at *4.[5] None of the cases on which Plaintiffs rely suggest that right of publicity laws can be stretched to cover the list compilation here.

### D.   Plaintiffs' Claims Fail for Another Fundamental Reason In That Their Names Were Never Used Publicly.

Plaintiffs try to argue the right of publicity laws here do not involve a public use requirement because the laws do not explicitly state that such a public use is necessary. Opp. at 15. Plaintiffs' argument is specious. Plaintiffs cannot cite a single right of publicity case that survived a motion to dismiss where there was no public usage of that identity.

As Plaintiffs acknowledge, the statutes in Alabama, Indiana, Nevada, Ohio, and South Dakota all define or contain reference to the "right of *publicity.*"  Opp. at 15.  It is also clear that when the California and Puerto Rico legislatures enacted their statutes, they likewise contemplated the statutes as ones dealing with "publicity." *See* Rodriguez Decl., Ex. B, Assembly Republican Caucus Analysis, dated Feb. 14, 1984, p. 1 (Cal. Civil Code § 3344 "codif[ied] the *right of publicity* and accord[ed] statutory recognition to the previous common law evolution of that right.") (emphasis added); P.R. Law No. 139-2011, P.R. Laws Ann. Tit. 32, § 3154 (contrasting Puerto Rico's statutory "*right to publicity*," which "provides the individual with a proprietary right over what their identity is," with the "right to privacy," which protects "information" that "people

---

publicity. 498 F.2d 821, 825–27 & n.11 (9th Cir. 1974). *Del Amo v. Baccash* involved the unauthorized use of models' photos to advertise a business, squarely protected by the right of publicity. 2008 WL 4414514, at *1 (C.D. Cal. Sept. 16, 2008). *Davis v. Facebook, Inc.*, 956 F.3d 589, 597 (9th Cir. 2020) was not a right of publicity case and is irrelevant.

[5] The same is true for *Sessa v. Ancestry.com Operations Inc.*, No. 2:20-CV-02292, 2021 WL 4245359, at *6 (D. Nev. Sept. 16, 2021).

have about that individual, their communications, body and thoughts") (Rodriguez Decl., Ex. A, emphasis added).[6] The lack of a an *explicit* mention of publicity or public use in the right of *publicity* statutes, particularly in light of this legislative history, suggests only that such requirement is "so inherent in the idea of the offense that it required no statutory affirmation." *State v. Tolliver*, 19 N.E. 3d 870, 873 (Ohio 2014) (discussing, for example, the mens rea requirement in criminal statutes despite no such express element).[7]

Plaintiffs rely on a wholly inapposite case to try to support their argument that no publicity is required to state a right of publicity claim: *Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865, 876 (W.D. Wash. 2021). To the contrary, *Knapke* says nothing more than that the internet is public. *Knapke* involved a public use of the plaintiff's name and photo to advertise a distinct product: the defendant's products and services on its website. *Id.* at 872. *Knapke* simply held that where an advertisement is on the "internet, which is available to the public at large," plaintiff need not *plead* that another member of the public—besides herself—actually saw the advertisement. *Id.* at 876. It does not stand for the proposition that plaintiffs need not plead public use to state a right of publicity claim and has no relevance here. (And ironically, in contrast with *Knapke,* Plaintiffs do not plead that even they themselves witnessed the purported right of publicity violation; in fact, they affirmatively plead the opposite. Am. Compl. ¶ 55.)[8]

---

[6] While Washington's right of publicity statute does not contain an overt "publicity" reference, in the House debate on the statute, Rep. Phil Dyer cited the non-consensual use of a computer-enhanced photograph of himself "to sell swimsuits on Valentine's Day" as a hypothetical violation, which underscores a *public* use. Hrng. on H.B. ESHB 1074 before the House Floor, 55th Leg., 1997 Reg. Sess. (27:42-28:03), available at https://tinyurl.com/5cy8xe4s.

[7] Further, if Plaintiffs' interpretation were correct, there would be no need for states to consider or pass landmark data privacy legislation, as California has now done *twice*. Mot. at 17, n. 9.

[8] Plaintiffs' reliance on *Siegel v. Zoominfo Technologies, LLC* is equally misplaced because there, plaintiff's name and photo were used in "free preview" website pages to *advertise*

## II. At Most, Plaintiffs Allege a Non-Infringing Incidental Use of Their Identities.

As to TMBI's showing that Plaintiffs have at most alleged non-actionable incidental use, Plaintiffs primarily contend this issue cannot be resolved on the pleadings. Opp. 19–21.[9] Their own authority belies this conclusion; *Stayart v. Google, Inc.*, 710 F.3d 719 (7th Cir. 2013), cited by Plaintiffs, held that the incidental use doctrine applied under Wisconsin law on a motion to dismiss because the plaintiff had "not pled any facts showing a substantial connection between Google's use of her name and its efforts to generate advertising revenues," where the plaintiff alleged Google's algorithm used her name to automatically suggest search queries. *Id.* at 721. Other decisions reserving the question of incidental use for the factfinder involved questions of the value of the identity or prominence of the alleged use, questions which are absent here.

Plaintiffs' complaint makes clear that neither magazine subscribers nor list recipients are aware of the identity of any individual among the many thousands in the list. The value of the list, per their own allegations, is therefore not tied to the commercial value of any single person's identity. Plaintiffs plead themselves out of a claim. *See Stayart*, 710 F.3d at 721; Mot. at 20–22.

---

defendant's subscription services. 2021 WL 4306148, at *1 (N.D. Ill. Sept. 22, 2021). This is a public use of a person's likeness online to induce a purchase, whereas here, no name —let alone any of Plaintiffs' names—is made available publicly prior to the (private) purchase of a List.

[9] Plaintiffs' contention that "TMBI has not established that this defense exists for all of the statutes at issue" is unavailing. Opp. at 19. Setting aside that several statutes have codified some variation on an incidental use defense, Plaintiffs rely on the same authority, *Davis v. Electric Arts Inc.*, 775 F.3d 1172, 1180 n.5 (9th Cir. 2015), cited by TMBI for the principle that the defense is "widely recognized" even where not codified. Mot. at 20, n.13; Cal. Civ. Code § 3344(b); Ohio Rev. Code Ann. § 2741.09(A)(4); P.R. Laws Ann. tit. 32, § 3151(c); Wash. Rev. Code § 63.60.070(6). A use too incidental to show a commercial purpose is not actionable; Plaintiffs point to no authority suggesting otherwise under any state's law.

### III. Accepting Plaintiffs' Right of Publicity Theory Would Violate the First Amendment and Equivalent State Protections.

Plaintiffs do not dispute that the laws at issue are content-based regulations that favor certain forms of speech over others. Instead, they argue only that intermediate scrutiny is the appropriate standard, and the right of publicity laws satisfy intermediate scrutiny as applied. Opp. at 22. They are wrong. *Reed* makes plain that laws that regulate speech "based on its communicative content," such as those at issue here, are subject to strict scrutiny review. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). Even if *Reed* alone did not require application of strict scrutiny here, strict scrutiny would apply because the communication of names and addresses *en masse* is noncommercial speech, more akin to phone books or directories (held non-commercial even when sold for profit), than to the personal credit reports to which Plaintiffs attempt to analogize. Mot. at 22–23.[10] Banning mailing lists would burden far more speech than any legislature intended, and would simultaneously do nothing to protect a person's likeness from unauthorized promotional use. The laws cannot be applied to TMBI's alleged speech in the broad manner advanced by Plaintiffs without running afoul of the First Amendment.

### **CONCLUSION**

For all of the foregoing reasons, the Court should dismiss this case with prejudice.

---

[10] Additionally, Plaintiffs' reliance on *Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016) is misguided for several reasons. Respectfully, the court's determination that the alleged subscriber mailing lists at issue there were commercial speech was incorrect and failed to address controlling Supreme Court precedent. Also, the statute in *Boelter*, including its limited exceptions, is not comparable to the statutes here. *See id.* at 435. Finally, and significantly, *Boelter* declined to address the clear language of *Reed*, which was argued to have superseded *Central Hudson*'s intermediate scrutiny analysis for commercial speech restrictions that are content-based, given *Reed*'s application of strict scrutiny to a commercial sign ordinance. (Notably, the Michigan legislature amended the statute in *Boelter* to avoid future misapplications of that law, S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (Mich. 2016).)

-11-

Dated:  July 7, 2022

Respectfully Submitted,

DENTONS US LLP

By: /s/ *Kristen C. Rodriguez*

Sandra D. Hauser
DENTONS US LLP
1221 Avenue of Americas
New York, New York 10020-1089
sandra.hauser@dentons.com
Tel: (212) 768-6802

Natalie J. Spears (*Pro Hac Vice*)
Kristen C. Rodriguez (*Pro Hac Vice*)
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606-6404
Tel:  (312) 876-8000
Fax:  (312) 876-7934
natalie.spears@dentons.com
kristen.rodriguez@dentons.com

*Counsel for Defendant*
*Trusted Media Brands*

/121803534