UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/29/2023
```

MARTHA M. BOHNAK, DEBBIE JO TERZOLI, BELINDA LOOMIS, CYNTHIA BROWN, CONNIE JOHNSON, DONNA BROWN, KATHLEEN HELTON, LESLIE TRANTUM, TAMMY JOHNSON, SUE JONES, and JUAN SEPULVEDA, individually and on behalf of all others similarly situated,

       Plaintiffs,

 -against-

TRUSTED MEDIA BRANDS, INC.,

       Defendants.

No. 21 Civ. 7476 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Eleven named plaintiffs[1] (collectively, "Plaintiffs") bring this putative class action against Trusted Media Brands, Inc. ("Defendant" or "TMBI"), alleging sale, rental, or disclosure of TMBI

---

[1] Plaintiff Donna Brown is a citizen of Alabama who resides in McCalla, Alabama. Brown has been a subscriber of *Reader's Digest* magazine for approximately six years. (Compl. ¶ 33.)
 Plaintiff Debbie Jo Terzoli is a citizen of California who resides in Rancho Cordova, California. Terzoli has been a subscriber of *Reader's Digest* magazine for approximately ten years. (Compl. ¶ 34.)
 Plaintiff Tammy Johnson is a citizen of California who resides in San Diego, California. Johnson has been a subscriber of *Taste of Home* magazine for approximately six years. (Compl. ¶ 35.)
 Plaintiff Connie Johnson is a citizen of Indiana who resides in Knox, Indiana. Johnson has been a subscriber of *Reader's Digest* magazine for approximately five years. (Compl. ¶ 36.)
 Plaintiff Belinda Loomis is a citizen of Nevada who resides in Las Vegas, Nevada. Loomis has been a subscriber of *Reader's Digest* magazine for approximately two years. (Compl. ¶ 37.)
 Plaintiff Cynthia Brown is a citizen of Nevada who resides in Henderson, Nevada. Brown has been a subscriber of *Reader's Digest* magazine for approximately two years. (Compl. ¶ 38.)
 Plaintiff Kathleen Helton is a citizen of Ohio who resides in Hillsboro, Ohio. Helton has been a subscriber of *Reader's Digest* magazine for approximately 50 years. (Compl. ¶ 39.)
 Plaintiff Martha M. Bohnak is a citizen of Ohio who resides in Cuyahoga Falls, Ohio. Bohnak has been a subscriber of *Taste of Home* magazine for approximately five years. (Compl. ¶ 40.)
 Plaintiff Sue Jones is a citizen of South Dakota who resides in Black Hawk, South Dakota. Jones has been a subscriber of *Reader's Digest* magazine for approximately 10 years. (Compl. ¶ 41.)
 Plaintiff Leslie Trantum is a citizen of Washington who resides in Spokane, Washington. Trantum has been a subscriber of *Reader's Digest* magazine for approximately three years. (Compl. ¶ 42.)

subscribers' personal information, without the subscribers' knowledge or consent, to third parties for profit, in violation of Alabama, Indiana, California, Nevada, Ohio, South Dakota, Washington, and Puerto Rico statutes.

Presently before this Court is TMBI's motion to dismiss Plaintiffs' First Amended Complaint ("AC") pursuant to Federal Rules of Civil Procedure 12(b)(6). (ECF No. 17.) For the following reasons, TMBI's motion is GRANTED.

## BACKGROUND

The following facts are drawn from the AC and are accepted as true for the purpose of this motion.

TMBI is a Delaware corporation and publishes magazines such as *Reader's Digest*, *The Family Handyman*, *Country*, *Country Woman*, and *Taste of Home*. TMBI conducts business throughout Alabama, Indiana, California, Nevada, Ohio, South Dakota, Washington, and Puerto Rico, among other U.S. states. Plaintiffs are eleven residents respectively of these states who subscribe to at least one of TMBI's magazines. TMBI maintains a vast digital database comprised of its subscribers' names, basic demographic information, and subscription preferences. TMBI sells such information—which Plaintiffs define as TMBI's "Data Brokerage Products"—to various third parties, including "data miners, data aggregators, data appenders, data cooperatives, list rental recipients, list exchange recipients, and list brokers." (Compl. ¶ 2.) Plaintiffs define each class as the residents of each respective state who appear in any of TMBI's Data Brokerage Products.

The AC sets forth eight causes of action, respectively under the Right of Publicity statutes of the eight states: the Alabama Right of Publicity Act, Ala. Code § 6-5-772(a) ("Alabama

---

Plaintiff Juan Sepulveda is a citizen of Puerto Rico who resides in Toa Baja, Puerto Rico. Sepulveda has been a subscriber of *Reader's Digest* magazine for approximately three years. (Compl. ¶ 43.)

2

Statute")[2]; Indiana Code (IC) 32-36-1-1, *et seq*. (the "Indiana Statute")[3]; California Civil Code § 3344 (the "California Statute")[4]; Nevada Revised Statutes Annotated (Nev. Rev. Stat. Ann.) § 597.770, *et seq*. (the "Nevada Statute")[5]; Ohio Revised Code § 2741.01, *et seq*. (the "Ohio Statute")[6]; South Dakota Codified Laws § 21-64-1, *et seq*. (the "South Dakota Statute")[7]; Revised

---

[2] Plaintiffs point to the following statutory language in the Alabama Statute: "any person or entity who uses or causes the use of the indica of identity of a person, on or in products, goods, merchandise, or services entered into commerce in this state, or for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise or services … without consent shall be liable under this article to that person, or to a holder of that person's rights." (Compl. ¶ 7.)

[3] Plaintiffs point to the following statutory language in the Indiana Statute: "[a] person may not use an aspect of a personality's right of publicity for a commercial purpose … without having obtained previous written consent." IC 32-36-1-8(a). "Commercial purpose" is defined as, *inter alia*, "the use of an aspect of a personality's right of publicity … [o]n or in connection with a product, merchandise, goods, services, or commercial activities." (Compl. ¶¶ 9-10.)

[4] Plaintiffs point to the following statutory language in the California Statute: "Any person who knowingly uses another's name … or likeness, in any manner, on or in products, merchandise, or goods … without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable … to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use[.]" Cal. Civ. Code § 3344. (Compl. ¶ 11.)

[5] Plaintiffs point to the following statutory language in the Nevada Statute: "[t]here is a right of publicity in the name, voice, signature, photograph or likeness of every person. The right endures for a term consisting of the life of the person and 50 years after his or her death, regardless of whether the person commercially exploits the right during his or her lifetime." Nev. Rev. Stat. Ann. § 597.790; "[a]ny commercial use by another of the name … of a person requires the written consent of that person or his or her successor in interest[.]" Nev. Rev. Stat. Ann. § 597.790; "[c]ommercial use" includes "the use of the name, voice, signature, photograph or likeness of a person on or in any product, merchandise or goods or for the purposes of advertising, selling or soliciting the purchase of any product, merchandise, goods or service." Nev. Rev. Stat. Ann. § 597.770. (Compl. ¶¶ 13-15.)

[6] Plaintiffs point to the following statutory language in the Ohio Statute: "a person shall not use any aspect of an individual's persona for a commercial purpose" unless "the person first obtains the written consent to use the individual's persona[.]" Ohio Rev. Code §2741.02(A)-(B). The term "persona" is defined as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value . . . 'Name' means the actual, assumed, or clearly identifiable name of or reference to a living or deceased individual that identifies the individual . . . 'Commercial purpose' means the use of or reference to an aspect of an individual's persona … [o]n or in connection with a place, product, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter." Ohio Rev. Code §2741.02(A)-(B). (Compl. ¶¶ 16-19.)

[7] Plaintiffs point to the following statutory language in the South Dakota Statute: "No person may use any aspect of a personality's right of publicity for a commercial purpose during the personality's lifetime or for seventy years after the death of the personality without the express written consent of the personality, or if the personality is deceased without the express written consent of the personality's next of kin or other person or entity that owns the right of publicity." S.D. Codified Laws § 21-64-2. Under the South Dakota Statute, "commercial purpose" includes "the use of an aspect of a personality's right of publicity in connection with a product, merchandise, goods, service, or commercial activity." *Id*. § 21-64-1(1). "Personality" is defined as "a living or deceased natural person who is a citizen of this state, or who died domiciled in this state whose name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism identifies a specific person and has commercial value, whether or not the person uses or authorizes the use of the person's rights of publicity for a commercial purpose that serves to identify a specific person[.]" "Right of publicity" means "a personality's property interest in the personality's name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism." *Id*. § 21-64-1(3). (Compl. ¶¶ 20-23.)

Code of Washington (RCW) 63.60.010, *et seq*. (the "Washington Statute")[8]; and 32 Laws of Puerto Rico (L.P.R.) § 3151, *et seq*. (the "Puerto Rico Statute")[9] (collectively, "State Statutes"). Under each State Statute, Plaintiffs seek injunctive relief, statutory damages, and punitive damages where available. TMBI moved to dismiss the AC.

## LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.

In meeting this plausibility standard, the plaintiff must demonstrate more than a "sheer possibility" of unlawful action; pleading facts that are "'merely consistent with' a defendant's

---

[8] Plaintiffs point to the following statutory language in the Washington Statute: "Every individual or personality has a property right in the use of his or her name, voice, signature, photograph, or likeness." RCW 63.60.010. Further, "Any person who uses or authorizes the use of a living or deceased individual's … name … on or in goods, merchandise, or products entered into commerce in this state … without written or oral, express or implied consent of the owner of the right, has infringed such right." RCW 63.60.050. (Compl. ¶¶ 24-25.)

[9] Plaintiffs point to the following statutory language in the Puerto Rico Statute: "Any natural or juridical person who uses another's likeness for commercial, trade, or advertising purposes without the previous consent of said person, the person who possesses a license for said likeness, his/her heirs if the person is deceased, or the authorized agent of any of the forgoing shall be liable for damages." 32 L.P.R. § 3152.
  Under the Puerto Rico Statute, "likeness" is defined as the "[n]ame, photograph, portrait, voice, signature, attribute or any representation of a person through which an average observer or listener may identify the same, produced using any reproduction procedure or technique." 32 L.P.R. § 3151. "Commercial purpose" is defined as "[t]he use of a person's likeness in connection with an advertisement, offer, or sale of a product, merchandise, good or service in the market." 32 L.P.R. §3152(h). "Person" is defined as a "Natural person, living or deceased, regardless of the previous use of his/her likeness for commercial purposes. It includes any legal entity that holds the rights of a person's likeness through a license or by transfer of publicity rights." *Id*. (Compl. ¶¶ 29-32.)

4

liability ... 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955); *see also Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007) ("Although the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice.  To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." (Internal quotes and cites omitted)); *Gavish v. Revlon, Inc.*, 2004 WL 2210269, at *10 (S.D.N.Y. Sept. 30, 2004) ("[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations and will not defeat a motion to dismiss.").

## DISCUSSION

The instant action is one among many substantially similar actions filed in this district and across the country.  Here, as elsewhere[10], Plaintiffs' argument centers on the statutory phrase "use [a person's name or identity] on or in" products, found in each of the State Statutes.[11]  Plaintiffs aver that, by selling subscribers' personal information to third parties, TMBI used the subscribers' name "on or in" the "Data Brokerage Products" within the meaning of the State Statutes.  Consistent with our colleagues' rulings, this Court disagrees.

First, as the *In re Hearst Commc'ns State Right of Publicity Statute Cases* Court adeptly explains, the State Statutes address the right of publicity. No. 21 Civ. 8895 (RA), 2022 WL 17770152, at *4 (S.D.N.Y. Dec. 19, 2022).  A "widely recognized intellectual property right," the right of publicity protects the "property interest" an individual has in their name or likeness when

---

[10] *See, e.g.*, *In re Hearst Commc'ns State Right of Publicity Statute Cases*, No. 21 Civ. 8895 (RA), 2022 WL 17770152, at *4 (S.D.N.Y. Dec. 19, 2022); *Dodd v. Advance Mag. Publishers Inc.*, No. 21 Civ. 8899 (RA), 2022 WL 17764815, at *1 (S.D.N.Y. Dec. 19, 2022); *Farris v. Orvis Co., Inc.*, No. 2:22 Civ. 00007, 2022 WL 10477051, at *1 (D. Vt. Oct. 18, 2022), *appeal withdrawn*, No. 22-3075, 2023 WL 2355752 (2d Cir. Jan. 10, 2023).
[11] Because Plaintiffs do not distinguish the State Statutes in their analysis, this Court conducts a joint analysis of all State Statutes.

such an individual's identity "carries *value* through . . . labor and effort." *Id.* (citing *Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 150 (3d Cir. 2013) and *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1322 (11th Cir. 2006)) (emphasis in original) (internal quotation marks omitted). A progeny of the common law right to privacy torts, the right of publicity, upon codification, was not contemplated to encompass any unconsented sale or rental of personal information in the data industry.[12]

Second, in this district and beyond, multiple courts have recently considered the same statutory argument over the same activity—the unauthorized sale of subscriber information—and rejected the same argument as made by Plaintiffs. For example, the Seventh Circuit, in affirming *Huston v. Hearst Commc'ns, Inc.*,[13] held that to meet "the commercial use" prong of Illinois' right of publicity statute, the plaintiffs' identity must be used to promote the sale of another product; the sale of the plaintiffs' identity as part of a mail list is thus insufficient. No. 21 Civ. 1196, 2022 WL 385176 (C.D. Ill. Feb. 7, 2022), *aff'd*, 53 F.4th 1097 (7th Cir. 2022) ("The purchase of mailing lists of subscribers has been a standard practice in the direct mail industry. . . this is not a commercial purpose as defined by the statute.")

The *Huston* ruling is consistent with the more recent *Farris v. Orvis Co., Inc.*, where the Court concludes that the right of publicity statutes of California, Ohio, and Illinois give no causes

---

[12] The data industry of our era—"data miners, data aggregators, data appenders, data cooperatives, list rental recipients, list exchange recipients, and list brokers"— did not exist in 1953 when the Second Circuit coined the phrase "right of publicity" through the following language:
> [I]t is common knowledge that many prominent persons (especially actors and ballplayers), far from having their feelings bruised through public exposure of their likenesses, would feel sorely deprived if they no longer received money for authorizing advertisements, popularizing their countenances, displayed in newspapers, magazines, bu[s]es, trains and subways. This right of publicity would usually yield them no money unless it could be made the subject of an exclusive grant which barred any other advertiser from using their pictures.

*Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866 (2d Cir. 1953).
[13] *Huston* involves Illinois' right of publicity statute, which is substantially similar to the State Statutes. 2022 WL 385176 (C.D. Ill. Feb. 7, 2022), *aff'd*, 53 F.4th 1097 (7th Cir. 2022).

of action "where the plaintiff's identity is the product being sold." No. 22 Civ. 00007, 2022 WL 10477051, at *1 (D. Vt. Oct. 18, 2022), *appeal withdrawn*, No. 22-3075, 2023 WL 2355752 (2d Cir. Jan. 10, 2023); *see also In re Hearst Commc'ns State Right of Publicity Statute Cases*, 2022 WL 17770152, at *5.  Even closer to home is *Wallen v. Consumer Reports*, where our learned colleague dismissed a substantially similar claim under Alabama, California, Hawaii, Indiana, Nevada, Ohio, and Washington right of publicity statutes on the ground that each of these statutes "requires a *public* commercial use of a person's name or identity for liability," where the plaintiffs there, as here, could not plausibly allege to have happened with subscriber list sales. No. 21 Civ. 8624 (VB), 2022 WL 17555723, at *4 (S.D.N.Y. Dec. 9, 2022).

      In the case at bar, the gist of Plaintiffs' argument is that the language of the State Statutes can be interpreted to cover TMBI's unauthorized sale of its subscribers' information and thus protect the subscribers' privacy right.  Such invocation of the publicity right statutes for alleged protection of privacy is akin to pointing to the eye of a sizable grey animal and declaring that because the eye appears to be that of a whale, the animal must be a whale—even though all precedents make unequivocally clear that the animal is an elephant.  As the *Hearst* Court points out, Plaintiffs' argument is novel. 2022 WL 17770152, at *8.  Yet, "our role as a federal court sitting in diversity is not to adopt innovative theories that may distort established state law." *See Runner v. New York Stock Exch., Inc.*, 568 F.3d 383, 386 (2d Cir. 2009) (citing and quoting *The Travelers Ins. Co. v. Carpenter,* 411 F.3d 323, 329 (2d Cir.2005)).

      Accordingly, the Court grants TMBI's motion to dismiss the AC.

**CONCLUSION**

For the foregoing reasons, Defendant TMBI's motion to dismiss the First Amended Complaint is GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 24 and terminate the action.

Dated: March 29, 2023  SO ORDERED:
White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge